UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | | |
|---|---|---|
| CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | No. 4:08-cv-02348-TLW-TER |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| SONOCO PRODUCTS CO., HARRIS E. DELOACH JR., and CHARLES J. HUPFER, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**LEAD PLAINTIFF CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................................. 2

III.  PROCEDURAL HISTORY.............................................................................. 4

IV.   ARGUMENT ........................................................................................... 5

    A.  Courts Favor Class Action Treatment of Securities Fraud Actions......................5

    B.  This Action Satisfies the Standards For Class Certification Under Fed. R. Civ. P. 23(a) ......................................................................................8

        1.  The Class is So Numerous That Joinder of All Members Is Impracticable... 8

        2.  There are Questions of Law and Fact Common to Each Member of the Proposed Class ....................................................................... 11

        3.  Plaintiff's Claims are Typical of Those of the Class ................................. 13

        4.  Plaintiff Will Fairly and Adequately Represent the Class ........................... 14

    C.  The Conditions of Rule 23(b)(3) are Satisfied by the Proposed Class .............16

        1.  Common Questions of Law or Fact Predominate....................................... 17

            a.  Plaintiff Has Established Its Entitlement to Utilize the Fraud-On-The-Market Theory ......................................................19

            b.  *Cammer* Factors ........................................................................ 21

        2.  A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action ....................................................... 25

V.    CONCLUSION................................................................................. 28

## TABLE OF AUTHORITIES

**CASES**

*Austell v. Smith*,
    634 F. Supp. 326 (W.D.N.C. 1986) ...................................................................26

*Benway v. Res. Real Estate Servs., LLC*,
    239 F.R.D. 419 (D. Md. 2006) ......................................................................7

*Brady v. Thurston Motor Lines*,
    726 F.2d 136 (4th Cir. 1984) .....................................................................10

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ...................................................................10

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ..................................................... *passim*

*Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*,
    375 F.2d 648 (4th Cir. 1967) .....................................................................10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................................7

*Friedland v. Coastal Healthcare Group*,
    1996 U.S. Dist. LEXIS 16088 (M.D.N.C. Sept. 12, 1996)................................ *passim*

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) ........................................................7, 18, 19, 20

*In re Accredo Health Inc. Sec. Litig.*,
    2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) ................................20, 22

*In re Apollo Group Inc. Sec. Litig.*,
    509 F. Supp. 2d 837 (D. Ariz. 2007) ...............................................................23

*In re BearingPoint, Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) ..................................................... *passim*

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008)......................................................................20, 22

*In re Dynegy, Inc. Sec. Litig.*,
    226 F.R.D. 263 (S.D. Tex. 2005)......................................................................28

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) ...........................................................................23

*In re Kirschner Med. Corp. Sec. Litig.*,
    139 F.R.D. 74 (D. Md. 1991)........................................................................ *passim*

*In re The Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ................................................................... *passim*

*In re PolyMedica Corp. Sec. Litig.*,
    432 F.3d 1 (1st Cir. 2005) ................................................................................19, 20

*In re PolyMedica Corp. Sec. Litig.*,
    453 F. Supp. 2d 260 (D. Mass. 2006) ..................................................20, 21, 22, 23

*In re Red Hat, Inc. Sec. Litig.*,
    2009 WL 2993735 (E.D.N.C. Aug. 28, 2009) ....................................................2, 5

*In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*,
    151 F.R.D. 597 (W.D.N.C. 1993)........................................................5, 8, 10, 11

*In re The Thaxton Group, Inc. Sec. Litig.*,
    No. 8:04-2612-GRA (D.S.C. filed Jun. 8, 2005) (Anderson, J.) ......................14, 26

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503 (1st Cir. 2005).................................................................20, 21, 22, 23

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ........................................................21, 22, 23, 24

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004)............................................................................20, 21

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)....................................................................................22

*Ottman v. Hanger Orthopedic Group, Inc.*,
    353 F.3d 338 (4th Cir. 2003) ..................................................................................17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................27

*Rhodes v. E.I. Dupont De Nemours & Co.*,
   2008 U.S. Dist. LEXIS 46159 (S.D. W.Va. June 11, 2008) .......................................................7

*Simpson v. Specialty Retail Concepts*,
   149 F.R.D. 94 (M.D.N.C. 1993) ...................................................................... *passim*

*South Carolina Nat'l Bank v. Stone*,
   139 F.R.D. 325 (D.S.C. 1991) ...............................................................6, 17, 18, 26

*Thomas v. Louisiana-Pacific Corp.*,
   246 F.R.D. 505 (D.S.C. 2007) ...............................................................8, 25, 26

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
   445 F.3d 311 (4th Cir. 2006) .....................................................................7

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) .................................................................22, 23

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) .............................................................20, 22

Lead Plaintiff City of Ann Arbor Employees' Retirement System ("Plaintiff"), pursuant to Fed. R. Civ. P. 23 ("Rule 23"), respectfully moves this Court for an Order appointing it as class representative and appointing Lead Counsel as Class Counsel.  Plaintiff also seeks certification of this action as a class action on behalf of a class consisting of all purchasers of the common stock of Sonoco Products Co. ("Sonoco" or the "Company") between February 7, 2007 and September 18, 2007, inclusive and who were damaged thereby (the "Class").[1]  The class claims, issues, and/or defenses concern whether Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

## MEMORANDUM OF LAW

## I.     PRELIMINARY STATEMENT

This case centers around Defendants' failure to disclose to the investing public price concessions and lost customers in Sonoco's Consumer Packaging segment.  The omission of this material information rendered Defendants' public statements during the Class Period,[2] including its earning guidance, false and misleading.  When the truth about these concessions and lost customers came to light – information Defendants knew prior to the start of the Class Period, but withheld from investors – shares of Sonoco dropped precipitously, resulting in millions of dollars in investor losses.  Plaintiff and the proposed Class are pursuing remedies under the Exchange Act and Rule 10b-5 promulgated thereunder.

---

[1]     Excluded from the Class are Defendants Sonoco, Harris E. DeLoach, Jr. ("DeLoach"), and Charles J. Hupfer ("Hupfer") (collectively, "Defendants"), any entity in which Defendants or any excluded person has or had a controlling interest, the officers and directors of Sonoco, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

[2]     The Class Period is February 7, 2007 through September 18, 2007, inclusive.

As set forth below, this federal securities fraud action should be certified under Rule 23(a) and (b)(3) because it satisfies all of Rule 23's requisites and is eminently suitable for class treatment. Indeed, courts in the Fourth Circuit routinely certify securities fraud class actions, including at least twice in 2009 alone. *See In re Red Hat, Inc. Sec. Litig.*, --- F.R.D. ----, No. 5:04-cv-473-BR, 2009 WL 2993735 (E.D.N.C. Aug. 28, 2009) ("*Red Hat*"); *In re The Mills Corp. Sec. Litig.*, 257 F.R.D. 101 (E.D. Va. 2009) ("*Mills*"). This case should be no exception.

## II.    STATEMENT OF FACTS

Founded in 1899, Sonoco is a global manufacturer of industrial and consumer packaging products and provider of packaging services operating in four segments: (a) Consumer Packaging; (b) Tubes and Cores/Paper; (c) Packaging Services; and (d) Other. ¶2.[3]  Of these segments, Consumer Packaging contributed significantly to the overall financial health of Sonoco, accounting for approximately 36% of the Company's net sales during 2007. ¶24. This contribution was due to, in large part, the success of the Flexible Packaging division of the Consumer Packaging segment, which produces flexible packaging for various foods and beverages. ¶28.

Heading into 2007, Sonoco enjoyed 14 consecutive quarters of meeting or beating consensus earnings estimates and achieved three consecutive years of double-digit earnings growth. ¶29. However, by late 2006, the Flexible Packaging division became embroiled in disputes with a number of key customers over pricing and other material issues. ¶¶30, 31. Consequently, in an effort to quell these disputes, Defendants were forced to provide sizeable price concessions to several large customers, including Mars, Inc. ¶31. In addition to these concessions, the Flexible Packaging division also lost accounts with Nestle, Inc. and Pepsi Cola,

---

[3]     All ¶ references herein refer to the Amended Class Action Complaint (the "Complaint"), which was filed on October 14, 2008 [Dkt. No. 27].

two of its largest customers. ¶31. The impact of these price concessions and lost customers was felt almost immediately as the Flexible Packaging division experienced a sharp decline in sales, revenues and profit margins. ¶32.

Armed with the knowledge that the Flexible Packaging division's problems were adversely impacting Sonoco's financial results, Defendants failed to inform the market of the same and instead projected a stellar year of earnings performance for the Company. ¶¶34, 36. For example, on February 7, 2007, while "assuming no significant change" in volumes or pricing, Defendants touted the Company's prospects for 2007 and provided annual earnings guidance in a range of $2.28-$2.31 per share. ¶¶42-44. Similarly, on April 20, 2007, based on the assumption that there was "no significant change in Companywide volumes and/or prices," Defendants actually raised its full-year 2007 earnings guidance to $2.36-$2.40 per share. ¶¶38, 60-61. The Company also reported that its Customer Packaging Segment had "higher selling prices" in the first quarter of 2007. ¶60. Taking advantage of the artificial inflation in the Company's stock price caused by these material misstatements, DeLoach sold 155,000 shares of his Sonoco holdings for gross proceeds of $6.6 million in late May 2007. ¶¶35, 94, 95.

Just three months later, however, on July 20, 2007, Defendants revealed, for the first time, that the financial performance of the Consumer Packaging segment "was negatively impacted by operational issues in flexible packaging." ¶74. To that end, Defendants disclosed that "base operating profit declined due to the lower volumes, price reductions in certain flexible packaging without offsetting reductions in costs, an unfavorable change in the mix of business, along with rising labor and other costs." ¶74. Despite these existing problems, Defendants refused to change the Company's yearly earning guidance. ¶¶40, 75. Nonetheless, the market

was shocked by these revelations, causing a one-day 14% drop in Sonoco's stock price on extremely high trading volume. ¶¶39, 79.

Shortly thereafter, on September 18, 2007, Defendants announced that Sonoco failed to satisfy its third quarter 2007 earning guidance and abruptly reduced the Company's yearly guidance to a range of $2.23-$2.26 per share. ¶83. The Company attributed the new guidance to "lower than previously projected Companywide volumes and higher raw material and other costs for the remainder of the year." ¶83. In response to this news, Sonoco's share price dropped over 7% on extremely heavy trading volume. ¶84. On a subsequent conference call discussing these issues, DeLoach admitted that the declining financial performance and reduced guidance was caused by "some bids in the latter part of [2006] and early [2007] where [Sonoco] actually lowered some pricing and that affected the financial performance." ¶85 (emphasis omitted).

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages. ¶112.

## III.    PROCEDURAL HISTORY

Plaintiff filed its Complaint on October 14, 2008 [Dkt. No. 27]. Thereafter, on November 5, 2008, Defendants moved to dismiss the Complaint [Dkt. No. 30]. Plaintiff filed its memorandum of law in opposition thereto on November 25, 2008 [Dkt. No. 33], and Defendants filed a reply on December 15, 2008 [Dkt. No. 35]. On July 31, 2009, the Court heard oral argument on Defendants' motion to dismiss.

On August 14, 2009, the Court issued its Order denying Defendants' motion to dismiss in its entirety (the "Order") [Dkt. No. 52], and Defendants filed their Answer and Defenses on August 28, 2009 [Dkt. No. 56]. As a result of the Court's Order, the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was lifted and the

case has proceeded to discovery.[4]  To that end, Plaintiff served its First Request for Production of Documents on September 3, 2009, and Defendants served their responses and objections thereto on October 9, 2009.  While Defendants have yet to produce any documents in response to Plaintiff's First Request for Production, the parties are working in good faith to reach an agreement on the scope and timing of Defendants' production.

## IV.    ARGUMENT

### A.    Courts Favor Class Action Treatment of Securities Fraud Actions

Courts in this Circuit have repeatedly stressed that "[s]ecurities litigation is particularly well suited to class action treatment."  *Red Hat*, 2009 WL 2993735, at *3;[5] *see also Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993) ("[i]t is well-recognized that alleged violations of federal securities laws are particularly well suited for class action proceedings and that Rule 23 is to be construed liberally to effectuate that end."); *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (holding that "[i]n light of the importance of the class action device in securities fraud suits, the requirements of Rule 23 are to be construed liberally."); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 77 (D. Md. 1991) ("[i]t is well-recognized that class actions are particularly appropriate to resolve shareholders claims alleging violations of the federal securities laws and that Rule 23 is to be construed liberally to effectuate that end."); *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 601 (W.D.N.C. 1993) ("It is widely accepted that class treatment is

---

[4]     On August 26, 2009, Defendants moved for reconsideration or, alternatively, certification for interlocutory appeal of the Order denying their motion to dismiss [Dkt. No. 54].  Plaintiff filed its opposition on September 14, 2009 [Dkt. No. 57] and Defendants filed a reply brief on September 24, 2009 [Dkt. No. 59].  The Court denied Defendants' motion on November 10, 2009 [Dkt. No. 61].

[5]     Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

particularly appropriate for proceedings involving alleged violations of securities laws and that Rule 23 is to be construed liberally to effectuate that end."); *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 328 (D.S.C. 1991) (holding that "[v]iolations of federal securities laws are particularly well suited for class action treatment" and that "[a]ctions based upon securities fraud are among the most usual class actions brought under Rule 23(b)(3).").

By providing a single forum in which to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *See Stone*, 139 F.R.D. at 328 (holding that because securities actions commonly involve large numbers of investors, each with a small individual claim, "class actions are the most efficient way of enforcing the securities regulations."). Rule 23 of the Federal Rules of Civil Procedure, which governs class actions, is therefore broadly structured so as to facilitate the certification of class actions. "Due to the importance of the class action device in the context of suits by aggrieved purchasers of securities, 'the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action.'" *Id.* *See also BearingPoint*, 232 F.R.D. at 538 (holding that "any doubts about the propriety of certification should be resolved in favor of certification.").

As the U.S. Supreme Court has held, class certification does not require a determination on the merits of the allegations asserted:

> [The court has no] authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.
>
>                \*       \*       \*
>
> In determining the propriety of a class action, the question is not whether plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974).  In determining class certification, while a district court should take a "'close look' at **relevant matters**'" and conduct a "rigorous analysis,"  "an evaluation of the merits to determine the strength of plaintiffs' case is not part of a Rule 23 analysis . . . ."  *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 366 (4th Cir. 2004).  *See also Benway v. Res. Real Estate Servs., LLC*, 239 F.R.D. 419, 422 (D. Md. 2006) ("In determining class certification, the Court will avoid an evaluation of the merits of the underlying claim . . . .).

Moreover, while the Fourth Circuit has noted that "sometimes it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question," there are limitations.  *Gariety*, 368 F.3d at 366.  Indeed, the Fourth Circuit stated that "[t]he analysis under Rule 23 must focus on the requirements of the rule, and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental.  The findings made for resolving a class action certification motion serve the court **only** in its determination of whether the requirements of Rule 23 have been demonstrated."  *Id.* (emphasis in original).  *See also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 323, n.13 (4th Cir. 2006) ("As we have discussed, *Gariety* requires the district court to take a 'close look' at the issues made relevant by the certification motion; *i.e.*, whether the case **can be resolved on a class-wide basis.**"); *Rhodes v. E.I. Dupont De Nemours & Co.*, No. 06-00530, 2008 U.S. Dist. LEXIS 46159, at *39 (S.D. W.Va. June 11, 2008) (holding that "[i]n recognition of the Supreme Court's directives -- including *Eisen* and *Falcon* -- the court will inquire no further into the merits than, is necessary to determine the likely contours of this action should it proceed on a representative basis.").  Consequently, the sole issue presented in this motion for class certification is whether Plaintiff has fulfilled the requirements of Rule 23.

For a class to be certified pursuant to Rule 23, the four requirements of Rule 23(a) must be satisfied, as well as at least one of the conditions under Rule 23(b).  As demonstrated below, Plaintiff has satisfied the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) for the proposed Class.  Therefore, class certification is proper.

**B.      This Action Satisfies the Standards For Class Certification Under Fed. R. Civ. P. 23(a)**

Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites to class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 507 (D.S.C. 2007) (certifying class action).   Plaintiff satisfies each of these prerequisites.

**1.      The Class is So Numerous That Joinder of All Members Is Impracticable**

"To be certified, the class must be 'so numerous that joinder of all members is impractical.'"  *Friedland v. Coastal Healthcare Group*, Nos. 95-306, 95-310, 95-323, 95-324, 1996 U.S. Dist. LEXIS 16088, at *7 (M.D.N.C. Sept. 12, 1996) (quoting Fed. R. Civ. P. 23(a)(1)).  With respect to numerosity, "[t]here is no mechanical test, and the plaintiff does not need to supply an exact count of the members of the class if a reasonable estimate clearly shows that joinder of all members is impractical."  *Id*.  at *7.  *See also Southeast*, 151 F.R.D. at 601 (stating that "[I]mpracticability of joinder is not determined by a numerical test alone, in addition to the potential size of the class, the Court should also consider the geographic dispersion of the class.").

"The numerosity requirement is seldom disputed in securities fraud cases given the large quantity of shareholders who purchase stock in reliance upon a company's public statements." *Mills*, 257 F.R.D. at 104-05. Indeed, "[i]n securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement has been met by a showing that a large number of shares were outstanding and traded during the relevant period." *Simpson*, 149 F.R.D. at 98. Moreover, in a securities fraud class action, a plaintiff "need not demonstrate with precision the numbers of persons in the purported class to satisfy the requirements that joinder is impracticable where such a conclusion is clear from reasonable estimates." *Kirschner*, 139 F.R.D. at 78. *See also BearingPoint,* 232 F.R.D. at 538 (certifying class and finding the numerosity requirement fulfilled where although the precise number of shareholders was unknown, the company had more than 194 million shares of common stock outstanding, because it was "reasonable to infer from this fact that there are hundreds, if not thousands, of potential class members dispersed throughout the country."); *Simpson,* 149 F.R.D. at 98 (holding that numerosity as required by 23(a)(1) was established by a "combination of a large number of shareholders and a substantial number of purchases of [company] stock.").

The proposed Class easily satisfies the numerosity requirement. During the Class Period, Sonoco's common stock was listed and actively traded on the New York Stock Exchange ("NYSE"), an open and efficient market. Further, Sonoco had over 100 million shares of common stock outstanding during the Class Period. Indeed, the Company had approximately 100,003,445 outstanding shares of common stock as of April 27, 2007, and approximately 100,919,886 outstanding shares of common stock as of July 27, 2007.[6] Accordingly, although

---

[6]     *See* Sonoco's Form 10-Q filed on May 1, 2007, a true and accurate copy of which is attached hereto as **Exhibit A**, and Form 10-Q filed on July 31, 2007, a true and accurate copy of which is attached hereto as **Exhibit B**. The Court can take judicial notice of the number of

the exact number of Class members is unknown at this time, it stands that there are at least hundreds, if not thousands, of individuals and entities located throughout the United States who purchased or otherwise acquired Sonoco's common stock at artificially inflated prices during the Class Period,[7] and that these shareholders are geographically dispersed.

Courts routinely certify classes in actions where the size of the proposed class is far smaller than the one proposed here. The Fourth Circuit has indicated a class as small as 74 members would be well within the appropriate range for class certification and that a smaller class would also be sufficient. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 145-146 (4th Cir. 1984) (stating that "we are unwilling as a matter of law to hold that a class of 74 persons does not meet the requirement of numerosity") (citing *Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (finding that 18 individuals was a sufficiently large number to constitute a class)). Likewise, district courts within the Fourth Circuit have determined that classes significantly smaller than the putative class involved here may be certified. *See Kirschner*, 139 F.R.D. at 78 (holding that "a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable."); *Southeast,* 151 F.R.D. at 601 (certifying a class of more than 400 members). "As it would be impracticable to join such a large and geographically diverse group" as Sonoco shareholders, the numerosity requirement is satisfied. *See Mills*, 257 F.R.D. at 105.

---

outstanding shares reported by Sonoco in its SEC filings. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999).

[7]     Plaintiff's expert, Dr. John D. Finnerty, notes that, at the close of the Class Period, there were 307 institutional holders of Sonoco common stock. *See* Declaration of John D. Finnerty, attached hereto as **Exhibit C**, at ¶18.

### 2.    There are Questions of Law and Fact Common to Each Member of the Proposed Class

The second requirement of Rule 23(a) is that class members share common questions of law or fact. Rule 23(a), however, does not require complete identity of a named plaintiff's claims with those of the Class. *See Mills*, 257 F.R.D. at 105 ("This does not mean that members of the class must have identical factual and legal claims in all respects."); *Southeast,* 151 F.R.D. at 601 (stating that commonality "is achieved with the existence of a common question of either fact or law, although not all questions of law and fact raised need be in common.").

In the context of securities fraud litigation, the commonality requirement of Rule 23(a)(2) has been applied permissively. *See Simpson,* 149 F.R.D. at 98; *Kirschner*, 139 F.R.D. at 78 (finding the commonality requirement had been satisfied and holding that "[i]t is well-established that a class action is appropriate in securities fraud cases involving similar or identical misrepresentations (even if they are issued at different times)."); *BearingPoint*, 232 F.R.D. at 539 (determining that the commonality requirement had been met and holding that "[m]embers of a proposed class in a securities case are especially likely to share common claims and defenses.").

Courts have held that "where the same scheme operates on a class of purchasers for the extended period of time, the requirement of (a)(2) will likely be satisfied." *Kirschner*, 139 F.R.D. at 78, 80 (finding that common questions are at the heart of the litigation where "the underlying activities of defendants affected all members of the proposed class in the same manner"); *Southeast*, 151 F.R.D. at 602 (holding that "a course of repeated representations will satisfy the commonality requirement where the same scheme operates on a class of purchasers."); *Friedland*, 1996 U.S. Dist. LEXIS 16088, at *8 (holding that the commonality element is "satisfied easily because all claims arise out of the same alleged course of conduct, creating

common questions of fact, and recovery is sought under the same legal theories."). In particular, "in the §10b-5 context, misrepresentations in annual reports, interim reports, and press releases have been found to satisfy the common question requirement." *Simpson*, 149 F.R.D. at 98.

Here, the claims arise out of the same alleged course of conduct – Sonoco's omissions and issuance of materially false and misleading statements during the Class Period concerning bullish earnings guidance and selling prices in the Company's Consumer Packaging segment. Based on the common cause of fraud alleged, the Complaint alleges numerous common questions of law and fact shared by the Class members, such as:

1. Whether the federal securities laws were violated by Defendants' alleged acts and omissions;

2. Whether the statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business and operations of Sonoco;

3. Whether the Defendants acted willfully, with knowledge, or were reckless, in omitting and/or misrepresenting material facts; and

4. Whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

*See* ¶116.

Proving the existence and nature of Defendants' material omissions and materially false and misleading statements during the Class Period – the most important issue in a securities case – will be common to all members of the Class in this action. That is, Defendants' alleged false statements and omissions were uniformly made to members of the Class – via press releases, conference calls and through filings with the SEC, as set forth in the Complaint.

Further, the same facts that give rise to Plaintiff's claims also give rise to the claims of the members of the proposed Class. Absent Class members necessarily would have to prove the identical facts and answer identical legal questions if they pursued their claims individually. *See*

*Odmark v. Mesa Ltd. P'ship*, 3:91-CV-2376-X, 1992 U.S. Dist. LEXIS 16789, at *10 (N.D. Tex. June 5, 1992), *aff'd*, 59 F.3d 1241 (5th Cir. 1995) ("If the class plaintiffs prove their case with respect to the alleged wrongful conduct, they will also have provided all the proof needed on the issue of misrepresentation for every other member of the class.").  Accordingly, Plaintiff has demonstrated the existence and predominance of common questions of fact and law.

### 3.    Plaintiff's Claims are Typical of Those of the Class

The typicality requirement of Rule 23(a) is satisfied where, as here, the same event or course of conduct gives rise to the plaintiff's claims and the claims of other members, especially where the claims are based on the same legal theory.  However, "typicality does not mean identical."  *See Simpson,* 149 F.R.D. at 99*; BearingPoint*, 232 F.R.D. at 538 ("commonality and typicality requirements do not 'require that members of the class have identical factual and legal claims in all respects.'"); *Kirschner*, 139 F.R.D. at 79 (typicality "does not require that the claims of the named representatives be 'co-extensive with' or 'identical to' those of the other class members.").  Rather, the typicality requirement "is satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the named parties and the other members of the class." *Id.*  "'The mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification.'"  *BearingPoint*, 232 F.R.D. at 538.

Here, Plaintiff's claims are identical to those of the Class.  Plaintiff's claims arise out of the same course of conduct as the Class claims and are premised on the same legal theory.  For example, Plaintiff and other members of the proposed Class allege that Defendants' dissemination of materially false and misleading public information, which artificially inflated the price of Sonoco's common stock throughout the Class Period, caused harm once revealed.

Moreover, Plaintiff's claims, like the Class claims, are premised on the same legal theory – Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Finally, Plaintiff and the proposed Class relied on the integrity of the market when they purchased Sonoco common stock at prices that were artificially inflated by Defendants' misrepresentations and omissions, and were damaged upon the revelation of the true operating condition of the Company.

Thus, because the claims "arise from the same course of conduct and share the same legal theory," Plaintiff's "claims are therefore typical of those of the proposed [Class], and Rule 23(a)(3) is satisfied…." *See In re The Thaxton Group, Inc. Sec. Litig.*, No. 8:04-2612-GRA (D.S.C. filed Jun. 8, 2005) (Anderson, J.) (granting class certification).

### 4.    Plaintiff Will Fairly and Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met where it appears that: (1) the interests of the plaintiff and other members of the class will coincide; and (2) plaintiff and his attorney will vigorously prosecute the action. *See Kirschner*, 139 F.R.D. at 79; *Simpson*, 149 F.R.D. at 102; *BearingPoint,* 232 F.R.D. at 541.

Here, Plaintiff satisfies both prongs of the adequacy test of Rule 23(a)(4) for the proposed Class. First, as established above, Plaintiff's interests coincide with those of other Class members. Plaintiff, like all Class members, was injured as a result of Defendants' false and misleading public statements throughout the Class Period that artificially inflated Sonoco's stock price until the truth of the false and misleading nature of the statements emerged. Proof of Plaintiff's claims will establish the same issues of law and fact as the claims of the Class as a

whole. As a result, Plaintiff and the Class have precisely the same interest in achieving the maximum possible recovery.

Additionally, Plaintiff and proposed Class Counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia"), will vigorously prosecute this action. In determining adequacy of a proposed class representative, "[t]he extent of the representatives' knowledge and experience" is not determinative but rather the relevant inquiry is his "ability and commitment to prosecute the action vigorously." *Friedland*, 1996 U.S. Dist. LEXIS 16088, at *10. Plaintiff is willing and able to represent the Class in this action. Plaintiff understands the commitments and the fiduciary responsibilities attendant to serving as class representative.

In addition to satisfying the adequacy prong of Rule 23(a)(4), Coughlin Stoia also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel. Rule 23(g)(4) requires the court to appoint counsel who will fairly and adequately represent the Class. Additionally, in appointing class counsel, Rule 23(g)(1)(A) requires the court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class."

First, Coughlin Stoia has worked vigorously to prosecute this action since the firm's appointment as Lead Counsel. If appointed as Class Counsel, Coughlin Stoia will continue to work to prove the claims being prosecuted by Plaintiff on behalf of itself and the Class. Second, Coughlin Stoia is highly experienced in class action litigation. The firm has extensive experience in the prosecution and successful resolution of complex securities fraud class actions

15

in courts throughout the United States.[8]  For example, in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 790, 797 (S.D. Tex. 2008), Judge Harmon stated:

> This Court considers Coughlin Stoia "a lion" at the securities bar on the national level. . . Lead Counsel's fearsome reputation and successful track record undoubtedly were substantial factors in Lead Counsel's obtaining these extraordinary recoveries.
>
> The experience, ability, and reputation of the attorneys of Coughlin Stoia is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.

As a result, Coughlin Stoia has vast knowledge of the applicable securities laws at issue here.  Moreover, Lead Counsel has demonstrated its willingness to commit substantial resources to representing the Class in this action through its efforts in prosecuting this action to date.  *See* Section III, above.

Because there is no question about the competence of counsel to fairly and adequately represent the interests of the Class, the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and Plaintiff's choice of counsel should be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

### C.    The Conditions of Rule 23(b)(3) are Satisfied by the Proposed Class

In addition to meeting the requirements of Rule 23(a), this action also satisfies the requirements of Rule 23(b), that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. As set forth below, this case meets all the criteria set forth in Rule 23(b)(3).

---

[8]    Coughlin Stoia is a vigorous advocate and has demonstrated familiarity with securities litigation, both in this Circuit and nationwide.  Coughlin Stoia's firm résumé is attached hereto as **Exhibit D**.

### 1.    Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual members.  *See Simpson*, 149 F.R.D. at 102.  This "predominance" requirement does not "demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues."  *Stone*, 139 F.R.D. at 331.  "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones."  *Kirschner*, 139 F.R.D. at 79.

Here, the Complaint alleges that Defendants violated §§10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  The elements comprising a §10(b) claim include: (1) a misstatement or an omission; (2) of material fact; (3) made with scienter; (4) that proximately caused the plaintiffs' injuries; and (5) on which the plaintiffs relied.  *See Ottman v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 342 (4th Cir. 2003).  Because all members of the Class must establish the same facts to prove these elements and establish Defendants' liability, common questions of law and fact predominate in this case.  *See Stone*, 139 F.R.D. at 331.

In securities class actions, "[t]he main variance among class members is the amount of damages, but this is not usually considered a substantial obstacle to certification."  *Friedland*, 1996 U.S. Dist. LEXIS 16088, at *12.  Although reliance is an element of a Section 10(b) claim, Plaintiff alleges a fraud-on-the-market theory, which raises a presumption of reliance supporting certification.  *See Basic*, 485 U.S. at 247.  The Supreme Court expressly endorsed the fraud-on-the-market doctrine in *Basic*, describing this theory as follows:

> The fraud on the market theory is based on the hypothesis that, in an open and
> developed securities market, the price of a company's stock is determined by the

available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Id.* at 241-242.

The Court in *Basic* determined that "[r]equiring proof of individualized reliance from each member of the proposed class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Id.* at 242. However, the Court held that through the fraud-on-market theory, the application of a rebuttable presumption of reliance would overcome this barrier. *Gariety*, 368 F.3d at 363 (citing *Basic*, 485 U.S. at 241-249). "In practice, this presumption is very difficult to rebut." *Friedland*, 1996 U.S. Dist. LEXIS 16088, at *12.

It is well established that where a plaintiff alleges a "fraud-on-the-market" theory, the reliance of individual class members is not an issue. *See Stone,* 139 F.R.D. at 333 (finding that common issues predominate over individual issues and holding that "[b]ecause [plaintiffs] are entitled to a presumption of reliance, individual issues of reliance can not predominate over the numerous common issues."); *Friedland*, 1996 U.S. Dist. LEXIS 16088, at *12 (holding that "[a]lthough reliance on the misstatements or omissions is an element of a cause of action under Rule 10b-5, ever since *Basic* participants in 'impersonal, well-developed' securities markets have been rebuttably presumed to have relied on misleading statements that affected the market."); *BearingPoint*, 232 F.R.D. at 542-543.

If members of a proposed class were individually required to establish the reasonableness of his or her reliance on the market price of a particular securitty, this would be as "crippling to efficient class action litigation as requiring members of a proposed class to establish individual reliance on specific misrepresentations." *BearingPoint*, 232 F.R.D. at 542. *See also Stone*, 139

F.R.D. at 331 (holding that "most courts have held that a requirement that the issue of reliance must be individually proved will not prevent the certification of a class action, since to rule otherwise would preclude class actions in securities fraud cases and hamper enforcement of the federal securities laws.") (quoting *Newberg on Class Actions* § 22.46 at 94 (2d ed. 1985)).

### a.    Plaintiff Has Established Its Entitlement to Utilize the Fraud-On-The-Market Theory

In order to gain the benefit of the presumption of reliance under the fraud-on-the-market theory, a plaintiff must establish: "(1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed." *Gariety*, 368 F.3d at 364.

Plaintiff has satisfied these elements and is thus entitled to a presumption of reliance. First, the Court has already found that Plaintiff has alleged that Defendants made numerous public misrepresentations and that, at this stage in the litigation, the misrepresentations were material. *See* Dkt. No. 52 at 6 (discussing materiality of Defendants' statements and denying Defendants' motion to dismiss in its entirety).

Second, with respect to the efficiency of the market, the Fourth Circuit has held that "to determine whether a security trades on an efficient market, a court should consider factors such as, among others, whether the security is actively traded, the volume of trades, and the extent to which it is followed by market professionals." *Gariety*, 368 F.3d at 368. More specifically, *Gariety* and courts across the country accept the factors set forth in the case of *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989) ("*Cammer*"), as guiding a court's market efficiency analysis. *See e.g.*, *Simpson*, 823 F. Supp. at 354-55; *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 4 (1st Cir. 2005) ("widely-accepted market efficiency factors set forth in

*Cammer* . . . ."); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491 (S.D. Tex. 2004) ("*Lehocky*"); *In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 266 (D. Mass. 2006) ("widely accepted indicators of market efficiency . . .") ("*PolyMedica II*"); *In re Xcelera.com Sec. Litig.*, 430 F.3d 503 (1st Cir. 2005) ("'persuasive and widely followed' factors enumerated in *Cammer*.") ("*Xcelera.com*"); *In re Accredo Health Inc. Sec. Litig.*, No. 03-2216 DP, 2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006), *adopted by*, 2006 U.S. Dist. LEXIS 97620 (W.D. Tenn., Apr. 19, 2006) ("*Accredo*"); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 207-213 (E.D. Pa. 2008); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 119-120 (S.D.N.Y. 2008).   Indeed, the Fourth Circuit specifically adopted the *Cammer* factors in *Gariety*.[9] 368 F.3d at 368.

As detailed below, applying these well-developed and accepted factors to the present facts demonstrates the market efficiency for Sonoco stock during the Class Period.   Indeed, although expert opinion is not needed for Plaintiff to satisfy its Rule 23 burdens, this is detailed by Plaintiff's expert, Professor John D. Finnerty, Ph.D.   *See* Ex. C.   Dr. Finnerty's analysis addresses the *Cammer* factors and further applies additional scientifically sound and accepted methodologies that confirm the efficiency of the market for Sonoco stock during the Class Period to a high degree of statistical certainty.[10]

---

[9]    It is worth noting that while the *Gariety* decision vacated, in part, the district court's order of certification, the facts present in that case are far different than those present here. Specifically, *Gariety* involved a stock that was unlisted for half the class period, and thereafter only on the "Pink Sheets" and NASDAQ OTC Bulletin Board, and there were only 244 trades during the entire class period, an average of 2.5 trades per day.   As detailed herein, Sonoco is a company listed on the NYSE, is followed by numerous analysts, has numerous market makers, is frequently covered and reported on in the public media, and has significant daily trading volume and stock turnover.

[10]    At this stage of the litigation, and as noted above, the Court is not required to resolve the merits of the case, but is only required to conduct a "rigorous" analysis to determine whether sufficient evidence has been presented to give rise to the presumption of reliance, which Defendants can later rebut at trial.   *See, e.g.*, *Gariety*, 368 F.3d at 366; *Accredo*, 2006 U.S. Dist. LEXIS 97621 at *11 (collecting cases); *PolyMedica*, 432 F.3d at 17; *DVI*, 249 F.R.D. at 200

### b.     *Cammer* Factors

The collective factors enumerated in *Cammer* support the market efficiency of Sonoco stock during the Class Period.

**(a)     Trading Volume.**  High weekly trading volume is indicative of market efficiency because "many investors are executing trades on the basis of newly available or disseminated corporate information."  *Cammer*, 711 F. Supp. at 1286.  Indeed, it is one of the most important factors.  *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001).  There is a "substantial presumption" of efficiency where *weekly* trading volume exceeds 1% of total shares outstanding and a "strong presumption" at 2%.  *Cammer*, 711 F. Supp. at 1286.  Sonoco's weekly trading volume over the Class Period was 2.61%, giving rise to a strong presumption of efficiency here.  *See* Ex. C, at ¶14.

**(b)     Stock Analyst Coverage.**  "[T]he greater the number of securities analysts following and reporting on a company's stock, the greater the likelihood that information released by a company is being relied upon by investors."  *Xcelera.com*, 430 F.3d at 514; *see also PolyMedica II*, 453 F. Supp. 2d at 267.  At least six separate analysts followed Sonoco stock in 2007.  *See* Ex. C, at ¶16.  The number of stock analysts at leading broker-dealers who covered Sonoco during the Class Period is evidence that the market for Sonoco's common stock was efficient.  *Id.*, at ¶17.

---

(""[A]t the class certification stage, the Court need not concern itself with whether Lead Plaintiffs can prove their allegations . . . the Court need only assure itself that Lead Plaintiffs' attempt to prove their allegations will predominately involve common issues of fact and law.'"); *Lehocky*, 220 F.R.D. at 505, n.16 ("[a]t [the class certification] stage . . ., the Court need only inquire whether the stock traded in an efficient market and not examine the merits of the case . . . .  Thus, the Court will not address whether Defendants' [sic] can rebut the presumption of reliance.").

(c)    **Existence of Market Makers/Arbitrageurs.**[11]    "The existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F. Supp. at 1286-87. Sufficient market makers and arbitrageurs existed in Sonoco stock during the Class Period. *See* Ex. C, at ¶¶18-19.  Also, the vast majority of Sonoco shares were held by sophisticated institutional investors who can act as market makers and arbitrageurs. *Id.*[12]

(d)    **Eligibility to file SEC Form S-3.**    Form S-3, which incorporates a company's earlier SEC filings, "is predicated on the [SEC's] belief that the market operates efficiently for these companies . . . ." *Cammer*, 711 F. Supp. at 1284 (quoting *SEC Securities Act Release No.* 6331, 46 FR 41,902, *reprinted in* Fed.Sec.L.Rep. (CCH) Specs. Regs. No. 926, extra ed. (Aug. 13, 1981)).  Though the Form S-3 requirements have been relaxed since *Cammer*, "[c]ourts generally consider this factor to be 'extremely important' in market efficiency determinations." *PolyMedica II*, 453 F. Supp. 2d at 268; *DVI*, 249 F.R.D. at 210, n.23; *Krogman*, 202 F.R.D. at 476.  Sonoco was eligible to file a Form S-3 throughout the

---

[11]    "A market-maker is '[o]ne who helps establish a market for securities by reporting bid-and-asked quotations' (the price a buyer will pay for a security and the price a seller will sell a security)." *Xcelera.com*, 430 F.3d at 515.

[12]    Numerous courts have concluded that inclusion on a national exchange is a strong indicator of market efficiency. *See, e.g.*, *Accredo*, 2006 U.S. Dist. LEXIS 97621 at *8; *DVI*, 249 F.R.D. at 208-9; *PolyMedica II*, 453 F. Supp. 2d at 266; *Wagner*, 2008 U.S. Dist. LEXIS, at *25; *see also*, *Unger v. Amedisys Inc.*, 401 F.3d 316, 322 (5th Cir. 2005) (rejecting market efficiency where subject stock traded on the "less-organized" NASDAQ OTC Bulletin Board, but noting that "[i]n many cases, where heavily-traded or well known stocks are the target of suits, market efficiency will not even be an issue.").  Here, Sonoco was traded on the NYSE throughout the Class Period, "strong evidence that the market for its common stock was efficient during the Class Period." *See* Ex. C, at ¶¶35-36; *see also Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (describing the NYSE as "open and developed [where] the price of a company's stock is determined by all available material information regarding the company and its business").

Class Period, further indicating that it traded in an efficient market.  *See* Ex. C, at ¶¶20-22.

      **(e)**      **Cause and Effect Relationship.**  This factor is "the essence of an efficient market and the foundation for the fraud on the market theory."  *Cammer*, 711 F. Supp. at 1287.  As identified by Dr. Finnerty, this factor is met here.  *See* Ex. C, at ¶¶23-32.  As is detailed in Dr. Finnerty's expert report, Dr. Finnerty completed a comprehensive analysis of the market efficiency for Sonoco stock during the Class Period utilizing scientifically sound and accepted methodologies, such as an event study[13] and other mathematical/statistical analysis.  *See id.*; *see also Xcelera.com*, 430 F.3d at 512-14; *Unger,* 401 F.3d at 323 n.6; *PolyMedica II*, 453 F. Supp. 2d. at 268-70.  Dr. Finnerty's analysis corroborates market efficiency.  *See* Ex. C, at ¶¶31-32.

      **(f)**      **Institutional Ownership.**  As of December 31, 2006, 61% of Sonoco's common stock was held by institutional shareholders, a percentage that increased to 65% on September 30, 2007.  *See* Ex. C, at ¶37.  "High levels of institutional ownership and the active trading by these holders is further evidence that the market for Sonoco's common stock was efficient during the Class Period." *Id.*

      **(g)**      **Bid-Ask Spread.**  "The bid-ask spread is the difference between the price at which investors are willing to buy the stock and the price at which current stockholders are willing to sell their shares."  *Krogman*, 202 F.R.D. at 478.  "A large bid-ask spread is

---

[13]     "The tool most often used by experts to isolate the economic losses caused by the alleged fraud is the 'event study.'"  *In re Apollo Group Inc. Sec. Litig.*, 509 F. Supp. 2d 837, 844 (D. Ariz. 2007).  "An event study is a statistical regression analysis that examines the effect of an event on a dependant variable, such as a corporation's stock price."  *Id.*  "For securities-fraud purposes, the 'event' analyzed is the disclosure of the alleged fraud to the market."  *Id.*; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 169 (S.D.N.Y. 2007) ("In reaching his conclusions, [the expert] employed what is commonly termed as an event study.  In the majority of applications, the focus of an event study is the effect of an event on the price of a particular class of securities of the firm, most often common equity.").

indicative of an inefficient market, because it suggests that the stock is too expensive to trade." *Id.* Here, Dr. Finnerty concludes that the bid-ask spread for Sonoco stock during the Class Period was 0.15%, "which is a very narrow spread. Such a narrow bid-ask spread is indicative of a liquid and efficient market for the stock." *See* Ex. C, at ¶38.

        **(h)**    **Put-Call Parity.** "Put-call parity is a relationship that exists in an efficient market between the prices of a company's put and call options and its common stock." *See* Ex. C, at ¶37. Dr. Finnerty's analysis of the put-call parity relationship during the Class Period, *see id.*, at ¶¶39-47, "suggests that Sonoco's stock price fairly reflected its intrinsic value, as would be expected in an efficient market. This is further evidence that the market for Sonoco common stock was efficient during the Class Period." *Id.*, at ¶47.

        **(i)**    **Additional Tests.** Additionally, Dr. Finnerty examined possible short-sale constraints, and found that "[s]uch low levels of short interest suggest that short-sale constraints did not exist during the Class Period and are therefore consistent with market efficiency." *See* Ex. C, at ¶48. Dr. Finnerty also performed two statistical tests to determine whether the Sonoco stock returns followed a random walk during the Class Period because, "[i]n an efficient market, the stock price follows a random walk." *See id.*, at ¶¶49-52. Those two tests – the McNemar test and the Wilcoxon signed-rank test – confirmed "that Sonoco's stock traded in an efficient market during the Class Period." ¶¶51-52.

        Based on the *Cammer* factors widely accepted by the courts as well as Dr. Finnerty's corroborative analysis, the market for Sonoco stock during the Class Period was efficient and appropriately gives rise to a presumption of reliance sufficient to meet the predominance element of Rule 23(b)(3).

Finally, it is evident that Plaintiff purchased its Sonoco shares after the misrepresentations were made and before the truth was revealed. The Class Period for this action began on February 7, 2007. According to Plaintiff's certification, it purchased its Sonoco shares on May 15, 2007 and May 18, 2007, well within the period after misrepresentations were made and before the truth was revealed. In addition, Plaintiff retained 3,700 shares until August 29, 2007, which is after the first partial disclosure regarding Sonoco's true financial condition.[14] ¶104.

### 2.    A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

1.    the interest of members of the Class in individually controlling the prosecution of separate actions;

2.    the extent and nature of any litigation concerning the controversy already commenced by members of the Class;

3.    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4.    the difficulties likely to be encountered in the management of a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D); *Thomas*, 246 F.R.D. at 516. Each of these factors weighs strongly in favor of class certification here. To be sure, "[s]ecurities fraud actions typically meet the Rule 23(b)(3) requirement because the claims relate to acts or omissions of the same

---

[14]    *See* Certification of City of Ann Arbor Employees' Retirement System, dated June 26, 2008, a true and accurate copy of which was attached as Exhibit A to the original complaint filed in this action on June 26, 2008 [Dkt. No. 1].

defendants and damages of the individual class members might be too small to provide incentive for the individual to sue." *Mills*, 257 F.R.D. at 109.

Further, in this action, the interest of members of the Class in individually controlling the prosecution of separate actions is minimal. *See Thomas*, 546 F.R.D. at 516 ("the members of the class do not appear interested in individually controlling separate actions"). Indeed, the costs and expenses of such individual actions would be prohibitive when weighed against the potential individual recoveries:

> The losses suffered individually by each of the potential class members would not likely be sufficient to make it practical for the [plaintiff] purchasers to individually bring the costly and time consuming litigation required to recover in a complex case such as this. The plaintiffs' cost for depositions, photocopying and travel expense alone in all probability will far exceed the amount that the average investor paid for these [securities]. It is clear that a class action would be the most appropriate method of securing a remedy.

*See Stone*, 139 F.R.D. at 335; *see also Austell v. Smith*, 634 F. Supp. 326, 334 (W.D.N.C. 1986) (stating that "[t]o require each class member to bear the expense of litigation individually would be senseless.").

Moreover, the burden on the courts from adjudicating separate actions that arise out of the same facts would be significant. *See Thaxton*, at 10 ("Finally, a class action in this matter will serve to greatly reduce the burden on the judiciary, and will serve to minimize the unnecessary expenditure of valuable judicial resources."); *Austell*, 634 F. Supp. at 334 (holding that "[i]f class certification is not allowed, the courts may be faced with a multiplicity of suits all concerning the same proxy statement, merger, and alleged scheme to defraud."). Thus, with respect to the first two factors, all relevant considerations weigh in favor of class certification.[15] *See* Fed. R. Civ. P. 23(b)(3)(A)-(B).

---

[15]    As for Rule 23(b)(3)(C), Sonoco's principal place of business is located in this District, and the Company transacted substantial business here. ¶¶12, 15. Much of the conduct

Courts have uniformly recognized that the class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient resolution of large-scale securities fraud actions.  The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  District courts within the Fourth Circuit have similarly commended class actions as superior to other methods of adjudication of claims under the federal securities laws, and have found such claims particularly suitable to class treatment given the large number of potential plaintiffs and the likelihood that individual claims would often be too small to warrant individual suits.  *See Kirschner*, 139 F.R.D. at 80 (holding that "Courts have recognized that a class action is the most efficient means of litigating a securities fraud suit where the class 'consists of numerous investors, many of whom in all likelihood have individual claims too small to warrant an individual suit.'"); *Simpson*, 149 F.R.D. at 94 (finding that "the class action device is superior to other methods for adjudicating the §10b and Rule 10b-5 claims.").

Consistent with the requirements of Rule 23(b)(3), the certification of this litigation as a class action would not only be "superior to other available methods for the fair and efficient adjudication of the controversy," but appears to be the sole method for fairly and efficiently litigating the claims of all members of the proposed Class.  Accordingly, the prosecution of this action as a class action will "achieve economies of time, effort and expense, and promote

---

complained of occurred in this District, and much of the evidence and many of the witnesses relevant to Plaintiff's claims are located here.  This forum, therefore, is the most desirable in which to prosecute this action.  With respect to subparagraph (D), there is no reason to believe that Plaintiff's attorneys, who have substantial experience in class action litigation in this and other districts, will encounter significant or unusual difficulties in the management of this litigation.

uniformity of decisions as to persons similarly situated." *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 282 (S.D. Tex. 2005).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification should be granted in its entirety.

DATED:  November 16, 2009

MCCUTCHEN BLANTON HOPKINS &
CAMPBELL, LLP
WILLIAM E. HOPKINS (S.C. Bar 6075)

s/ WILLIAM E. HOPKINS
WILLIAM E. HOPKINS

1414 Lady Street (29201)
Post Office Box 11316
Columbia, South Carolina  29211-1316
Telephone:  803/256-6152
803/256-6155 (fax)
wehopkins@hopkinscampbell.com

Liaison Counsel Lead Plaintiff

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
JACK REISE (*pro hac vice*)
STEPHEN R. ASTLEY (*pro hac vice*)
MICHAEL L. GREENWALD (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@csgrr.com
sastley@csgrr.com
mgreenwald@csgrr.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      s/WILLIAM E. HOPKINS   

WILLIAM E. HOPKINS
