**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | CASE NO: 4:08-cv-2348-TLW-TER |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SONOCO PRODUCTS CO., HARRIS E. DELOACH JR., and CHARLES J. HUPFER, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S**
**MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT AND CITATION OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . 3

        A.     Plaintiff Fails to Meet Its Burden Under Rule 23. . . . . . . . . . . . . . . . . . . 3

        B.     Plaintiff Fails to Satisfy the Adequacy Requirement of Rule 23(a) . . . . . . . 5

               1.     Plaintiff Has Not Demonstrated Sufficient Knowledge
                      and Control of the Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               2.     Plaintiff Has Not Demonstrated the Requisite Credibility. . . . . . . 10

               3.     The Unusual Fee Arrangement Between Coughlin Stoia
                      and the VanOverbeke Firm Creates a Conflict of Interest
                      that Renders Plaintiff Inadequate. . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.     Plaintiff Fails to Show That the Proposed Class Satisfies the
               Requirements of Rule 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

               1.     Plaintiff Fails to Show a Presumption of Reliance. . . . . . . . . . . . . 17

               2.     Plaintiff Fails to Show Economic Loss. . . . . . . . . . . . . . . . . . . . . 18

        D.     The Class Period Should End on July 20, 2007 . . . . . . . . . . . . . . . . . . . . 24

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## I.     INTRODUCTION

Defendants oppose Lead Plaintiff's Motion for Class Certification ("Plaintiff's Motion") in its entirety because it fails to satisfy Federal Rule of Civil Procedure 23.  Contrary to what Plaintiff suggests, "[n]ot all securities fraud claims will proceed as class actions."  Pearce v. UBS PaineWebber, Inc., No. 3:02-2409-17, 2004 WL 5282962, at *13 (D.S.C. Aug. 13, 2004) (Exhibit 1 hereto).  This case exemplifies the type of securities case that should not proceed as a class action.[1]

The Amended Complaint generally alleges that certain of Sonoco's statements during the proposed class period were purportedly misleading because Sonoco failed to disclose that customers of its Flexible Packaging Division had been given price concessions.  See, e.g., Amended Complaint, ¶ 49.  Defendants deny that any material misrepresentations were made.  Indeed, the substantive allegations of the Amended Complaint lack any merit and are wholly misguided.  At this juncture, however, the Court is not to decide the merits, but rather is to conduct a "rigorous analysis" to determine whether Plaintiff has met its burden to prove by a preponderance of the evidence that class certification is proper.  Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004).

Plaintiff's Motion fails to establish that class certification is appropriate here for the following reasons.

- Plaintiff has failed to meet its burden.  As a threshold matter, the Fourth Circuit prohibits a plaintiff from resting on mere allegations in pleadings to prove entitlement to class certification.  Id.  Plaintiff blatantly ignores this requirement and simply recites

---

[1]  See, e.g., Gariety v. Grant Thornton, LLP, 368 F.3d 356 (4th Cir. 2004); Pearce, 2004 WL 5282962; see also Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (Local 66), 579 F.3d 401 (5th Cir. 2009); Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261 (5th Cir. 2007); Shiring v. Tier Techs., Inc., 244 F.R.D. 307 (E.D.Va. 2007).

allegations in the Amended Complaint in purported support of class certification. Plaintiff's Motion should be denied on this ground alone. (See below at pp. 3 – 5.)

- To satisfy Rule 23(a)(4), Plaintiff must demonstrate that it is an adequate class representative. Plaintiff cannot meet this showing because (a) Plaintiff filed a false certification with the Court, and thus, cannot establish the requisite credibility; (b) Plaintiff has conflicts of interest with the proposed class; and (c) Plaintiff's deposition testimony makes clear that it is Plaintiff's counsel, not Plaintiff itself, who is in control of the litigation. This latter fact is particularly troubling because a crucial reason behind enactment of the Private Securities Litigation Reform Act was to "empower investors so that they, not their lawyers, control securities litigation." Shiring v. Tier Techs., Inc., 244 F.R.D. 307, 315 (E.D. Va. 2007) (quoting S. Rep. No. 104-98, at 6 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 685). (See below at pp. 5 – 15.)

- To satisfy Rule 23(b)(3) in a securities case in the District of South Carolina, Plaintiff must establish that (a) it is entitled to the fraud-on-the-market presumption of reliance and (b) it will be able to establish loss causation on a class-wide basis. Pearce, 2004 WL 5282962, at *8 – *9. Plaintiff fails to establish either element. Indeed, Plaintiff's Motion makes no attempt to address loss causation or to present any support on that issue; rather, as noted, Plaintiff relies improperly on the unadorned allegations of the Amended Complaint. (See below at pp. 15 – 23.)

- Before a class can be certified, Plaintiff must demonstrate that the proposed class period has proper commencement and concluding dates. The proper concluding date of a class period in a securities case is the date on which the alleged undisclosed information is disclosed to the market. Simpson v. Specialty Retail Concepts, 149 F.R.D. 94, 103

(M.D.N.C. 1993).  Here, Plaintiff itself alleges that Sonoco disclosed price concessions –

the alleged undisclosed information – to the market on July 20, 2007.  <u>See</u> Amended

Complaint, ¶ 74.  Thus, if any class is to be certified, the end date of the class period must

be July 20, 2007.   (<u>See</u> below at pp. 24 – 27.)

For the reasons summarized above and developed below, Plaintiff's Motion for Class

Certification should be denied.  Alternatively, if the Court finds a class should be certified, the

class period should end on July 20, 2007.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     <u>Plaintiff Fails to Meet Its Burden Under Rule 23.</u>

"A district court may, in its discretion, order that an action proceed as a class action ***only***

***if it finds*** that the requirements of Federal Rule of Civil Procedure 23 have been satisfied."

<u>Gariety v. Grant Thorton, LLP</u>, 368 F.3d 356, 362 (4th Cir. 2004) (emphasis added).

Rule 23 requires that Plaintiff establish (a) the four requirements of Rule 23(a) –

numerosity, typicality, commonality, and adequacy of representation; ***and*** (b) that the proposed

class satisfies the requirements of one of the three Rule 23(b) categories.  <u>Id.</u>  Here, Plaintiff

requests certification of the class under Rule 23(b)(3), which requires the Court to find (a) that

questions of law or fact common to the members of the class predominate over any questions

affecting only individual members and (b) that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.  <u>Id.</u>

To satisfy Rule 23(b)(3), a class representative must be able to establish that the case can

be "manageable" if it is tried as a class action.  <u>Windham v. Am. Brands, Inc.</u>, 565 F.2d 59, 64

(4th Cir. 1977).  In practical terms, an action is "manageable" as a class action if the key issues

can be decided on a class-wide basis as opposed to requiring evidence on an individual basis.  <u>Id.</u>

at 68. "Class certification is not appropriate if individualized treatment of essential elements of the cause of action is required." Pearce, 2004 WL 5282962, at *8. As the Fourth Circuit held, "where the issue[s] … do[] not lend [themselves] to … a mechanical calculation, but require[] 'separate "mini-trials"' of an overwhelming large number of individual claims, courts have found … the case unmanageable as a class action." Windham, 565 F.2d at 68 (quoting Shaw v. Mobil Oil Corp., 60 F.R.D. 566, 570 (D.N.H. 1973)).

**In the Fourth Circuit, Plaintiff bears the burden to prove by a preponderance of the evidence that the requirements of Rule 23(a) and Rule 23(b)(3) have been met.** Pearce, 2004 WL 5282962, at *4 (citing Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001)); In re Safety-Kleen Corp. Bondholders Litig., No. 3:00-1145-17, 2004 WL 3115870, at * 2 (D.S.C. Nov. 1, 2004) (Exhibit 2 hereto). To meet its burden of proof, Plaintiff **may not** rest on the allegations of the Amended Complaint. Gariety, 368 F.3d at 365. As the Fourth Circuit explained,

> If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a "close look" at relevant matters, for conducting a "rigorous analysis" of such matters, and for making "findings" that the requirements of Rule 23 have been satisfied. Moreover, if courts could only consider the pleadings, then "parties would have wide latitude to inject frivolous issues to bolster or undermine a finding of predominance."

Id. (citations omitted).

Thus, the Court must "look beyond the pleadings and conduct a rigorous analysis" of whether Plaintiff has met its burden to prove the requisite elements of Rule 23. Id. at 367. In conducting this "rigorous analysis," the Court must address the factors spelled out in Rule 23, "even if they overlap with issues on the merits." Id. at 366.

Here, Plaintiff has manifestly failed to satisfy its burden to adduce evidence, and, as a result, the record is insufficient for the Court to follow the Fourth Circuit's mandate that "the factors spelled out in Rule 23 … be addressed ***through findings***."  Id. (emphasis added).  Despite the undeniable requirement that the Court look beyond the pleadings, Plaintiff's Motion rests almost entirely on the allegations in the Amended Complaint.  Plaintiff's reliance on allegations rather than evidence is plainly insufficient under well-established Fourth Circuit law, and Plaintiff's Motion should be denied on that ground alone.  Again, as the Fourth Circuit has explained, "by accepting the plaintiff's allegations for purposes of certifying a class …, the district court fail[s] to comply adequately with the procedural requirements of Rule 23."  Id. at 365.  But, here, Plaintiff offers the Court only its pleadings.[2]

Although Plaintiff has failed to meet its burden with respect to all elements of Rule 23, we focus our opposition on Plaintiff's failure to prove (a) the adequacy of representation element of Rule 23(a) (set forth in Section B, below); (b) the predominance requirement of Rule 23(b)(3) (set forth in Section C, below); and (c) that the proposed Class Period should end on September 18, 2007, rather than July 20, 2007 (set forth in Section D, below).

### B.    Plaintiff Fails to Satisfy the Adequacy Requirement of Rule 23(a).

"Pursuant to Rule 23(a)(4), plaintiff must demonstrate that he will fairly and adequately protect the interests of the class."  Shiring v. Tier Techs., Inc., 244 F.R.D. 307, 315 (E.D. Va. 2007) (citing Fed. R. Civ. P. 23(a)(4)).  As the Shiring Court explained,

Distilled to its essence the adequacy inquiry focuses on two questions:

(i)  has plaintiff demonstrated the requisite level of knowledge and control of the litigation to ensure that he will vigorously prosecute the claims asserted here, and

---

[2]  The only material provided by Plaintiff beyond the pleadings is the Affidavit of John Finnerty. But that Affidavit merely notes that Sonoco's stock price fell after certain announcements. There can be no serious contention that this simple fact satisfies the burdens set forth in Pearce and the other cases cited in the brief.

(ii)  has plaintiff demonstrated the requisite credibility to ensure that he will act as a fiduciary with respect to the class he seeks to represent.

Id.  "In conducting this two-part inquiry it is important to bear in mind that '[a]dequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy.'" Id. (quoting Berger v. Compaq Computer Corp., 257 F.3d 475, 481 (5th Cir. 2001)).  In addition to this two-part inquiry, Plaintiff must also demonstrate that it does not have any conflicts of interest with the prospective class members.  See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998).

Plaintiff attempts to meet its burden to demonstrate adequacy with two paragraphs in Plaintiff's Motion that consist of only bare assertions by counsel that Plaintiff will be an adequate representative.  See Plaintiff's Motion at pp. 13 – 14.  When one looks beyond these bare assertions at Plaintiff's deposition testimony, it is clear that Plaintiff is not an adequate class representative because (a) Plaintiff has not demonstrated sufficient knowledge and control of the litigation; (b) Plaintiff has not demonstrated the requisite credibility; and (c) Plaintiff has a conflict of interest with the prospective class members.

## 1.    Plaintiff Has Not Demonstrated Sufficient Knowledge and Control of the Litigation.

As the Shiring Court held, the inquiry into Plaintiff's knowledge and control of the litigation "must be particularly searching … because the [Reform Act] was 'intended to empower investors so that they, not their lawyers, control securities litigation … [and to change the existing system, in which] investors in the class usually have great difficulty exercising any meaningful discretion over the case brought on their behalf.'"  Shiring, 244 F.R.D. at 315 (quoting S. Rep. No. 104-98, at 6 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 685).

In Shiring, the court denied class certification because the plaintiff failed to demonstrate

that he, rather than his counsel, was in control of the litigation.  Id. at 316.  The Shiring Court relied on four factors to find that the plaintiff was an inadequate class representative.  As explained below, each of those four factors is present in this case.  Accordingly, Plaintiff here should be held an inadequate class representative.

Factor No. 1:  Plaintiff deferred to counsel in matters relating to the litigation.  Shiring, 244 F.R.D. at 316.

Plaintiff described its role in this litigation as simply "providing information as needed [and] coming to a deposition" because "managing [the] litigation will be in the hands of the law firm."  See Deposition of Willie Powell ("Powell Dep.") at p. 22.[3]  In fact, on repeated occasions, Plaintiff testified that it "defers" to counsel on matters respecting this litigation.  See, e.g., Powell Dep. at pp. 27, 39 (Exhibit 3 hereto).

Perhaps in acknowledgement of the limited, figurehead role contemplated for Plaintiff, the engagement letter between Plaintiff's counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia"), and Plaintiff expressly states that "Coughlin Stoia will defend and indemnify the City of Ann Arbor for any claims asserted against the City of Ann Arbor for its participation as a plaintiff in this action including, but not limited to, claims or sanctions involving attorneys' fees or costs."  Id. at p. 78.

If the parties to this agreement actually contemplated that Plaintiff would have the ability to influence, approve, direct, or decide issues or strategy relevant to this case, there would be no reason for such a provision.  This provision instead reflects that the parties anticipate that counsel alone will be making all pertinent decisions in this case and, as a result, counsel has agreed to indemnify Plaintiff should any of counsel's decisions or conduct in this case result in sanctions

---

[3]  The relevant excerpts from the Deposition of Willie Powell, Plaintiff's Rule 30(b)(6) representative, are attached hereto as Exhibit 3.

and/or the award of fees and costs.

Not only does this indemnification arrangement effectively show that Plaintiff intends to abdicate all control over this case to its counsel, but this arrangement raises concerns about compliance with South Carolina Rule of Professional Conduct 1.8(e), which states that "[a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that . . . a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter."

Here, under the terms of this agreement, Coughlin Stoia would be providing "financial assistance" to its client that does not fall within the exception to the general rule prohibiting such activity.  Sanctions, for example, for failure to respond to or cooperate in discovery under Fed. R. Civ. P. 37, would be covered by this indemnification provision, but are in no respect ordinary "costs and expenses of litigation" that, under South Carolina Rule of Professional Conduct 1.8(e), may be advanced and possibly repaid under a contingency arrangement.  And, if fees and costs are ever awarded against Plaintiff under this provision, Coughlin Stoia, rather than its client, will absorb these costs in their entirety, thereby providing financial assistance to its client that Coughlin Stoia will not recoup and that is not contingent on any outcome in this case.  This result would violate both the letter and the spirit of Rule 1.8(e).

Factor No. 2:  Plaintiff demonstrated a lack of knowledge regarding the allegations in the complaint.  Shiring, 244 F.R.D. at 316.

With respect to this factor, the Shiring Court emphasized that the class representative must have an independent grasp of the facts and not rely solely on counsel.  Id.

The fact that Plaintiff's knowledge of this case was derived entirely from counsel is evidenced by Plaintiff's complete lack of knowledge of the other cases in which Plaintiff is involved.  Plaintiff could not answer questions regarding the status of any other securities or

derivative case in which Plaintiff is involved.  See Powell Dep. at pp. 90 – 91 (Exhibit 3 hereto).

   ***Plaintiff did not even know that it had been appointed lead plaintiff in other cases.***

Plaintiff testified that it was not a lead plaintiff in any case other than the present case.  Id. at pp.

88 – 89.  But the truth is that Plaintiff has been appointed lead plaintiff in five other cases, two of

which are ***active*** cases.  See Exhibit 4 hereto (excerpts from orders appointing Plaintiff as lead

plaintiff).  Obviously, Plaintiff cannot adequately oversee or monitor cases where it does not

even know that it has been appointed to fulfill that role.

   Factor No. 3:  Plaintiff elected to pursue litigation based only on its counsel's
   investigation and research.  Shiring, 244 F.R.D. at 316.

   Here, Plaintiff first discussed potential claims against Sonoco in June 2008, when

Plaintiff was presented with an engagement letter that enclosed a draft complaint drafted by

Coughlin Stoia.  See Powell Dep. at pp. 27, 42, 45 – 46, 76 – 77 (Exhibit 3 hereto).  But the

undisputed testimony by Powell demonstrates that the investigation of Sonoco was conducted by

Coughlin Stoia, not Plaintiff:

   Q:  Did the System do any independent investigation?  I'm not talking about
   investigation that counsel did, but did the System investigate Sonoco before
   signing this engagement letter?

   A:  No.  Again, the System would delegate all the investigations to its legal
   counsel.

Id. at pp. 76 – 77.

   Indeed, Plaintiff's 30(b)(6) representative has not read any analyst reports, press releases,

or SEC filings relating to Sonoco and had no knowledge of anyone else at the System doing so.

Id. at pp. 57 – 58.

   Factor No. 4:  Plaintiff did not participate in the drafting of the complaint or in the
   decision of which individuals to name as defendants.  Shiring, 244 F.R.D. at 316.

   Plaintiff's testimony on this factor is unequivocal – Plaintiff had no input into the draft

- 9 -

complaint.

Q:  And did the System have any input into the draft complaint?

A:  No.

See Powell Dep. at p. 51 (Exhibit 3 hereto).  And, Plaintiff's counsel, Coughlin Stoia, identified

the defendants it would sue in this action, not Plaintiff.  Id. at p. 27.

### 2.    Plaintiff Has Not Demonstrated the Requisite Credibility.

Plaintiff is also an inadequate class representative because it has not demonstrated the

requisite credibility.  "'[A]s a fiduciary for the class, [plaintiff class representative] is required to

adhere to the highest standards of honesty and integrity.'"  Shiring, 244 F.R.D. at 316 - 317

(quoting Weisman v. Darneille, 78 F.R.D. 669, 671 (S.D.N.Y. 1978)).  "Thus, to be appointed

class representative, a plaintiff must demonstrate that he exhibits 'honesty, conscientiousness,

and other affirmative personal qualities.'"  Id. at 317 (quoting 7A Charles A. Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice and Procedure § 1766 (2007)).

The Shiring Court held that the plaintiff failed to demonstrate the requisite credibility

because plaintiff filed false sworn certifications regarding his purchase of the defendant

company's stock.  Shiring, 244 F.R.D. at 317 (citing 7-92 Evan A Davis, et al., Securities Law

Techniques § 92.05 (noting that courts have precluded named plaintiffs from serving as class

representatives because of failure to comply with the certification requirements)).

Here, Plaintiff likewise filed a false certification with the Court.  According to Plaintiff's

Certification filed with the Court on June 26, 2008, Plaintiff purchased 2200 shares of Sonoco

stock on May 15, 2007, and sold 3700 shares of Sonoco stock on August 29, 2007.  See Docket

No. 1.  But, as Plaintiff's representative readily admitted, these transactions are not Plaintiff's

transactions in Sonoco stock.  See Powell Dep. at pp. 69 – 71 (Exhibit 3 hereto).  Rather, these

transactions are those of an entity that is entirely separate from Plaintiff and whose stock holdings are not considered to be the stock holdings of Plaintiff.  Id.  Specifically, these transactions in Sonoco stock are those of City of Ann Arbor Retiree Health Care Benefits Plan and Trust ("VEBA"), not Plaintiff.  Id.

"Plaintiff's inadvertence or [its] indifference to the [Reform Act]'s certification requirements demonstrates a lack of diligence and candor that, in conjunction with [its] other deficiencies [identified in the preceding section], counsel against a finding of adequacy." Shiring, 244 F.R.D. at 317.  Accordingly, Plaintiff's Motion should be denied because Plaintiff has failed to prove that Rule 23(a)'s requirement of adequacy of representation.

**3.    The Unusual Fee Arrangement Between Coughlin Stoia and the VanOverbeke Firm Creates a Conflict of Interest that Renders Plaintiff Inadequate.**

Plaintiff's relationship with its primary counsel, VanOverbeke Michaud & Timmony, PC ("VanOverbeke"), and that firm's role in this case create a host of issues that, standing alone, render Plaintiff an inadequate representative.

VanOverbeke is Plaintiff's general counsel that advises Plaintiff on a regular basis.  See Powell Dep. at p. 20 (Exhibit 3 hereto).  VanOverbeke normally charges Plaintiff on an hourly basis for the legal services it provides to Plaintiff.  Id. at p. 21.  VanOverbeke's role in this case, according to Plaintiff, is to serve "as legal counsel to [Plaintiff's] board."  Id. at p. 51.  But, for VanOverbeke's work for Plaintiff on this particular case, there is no expectation that Plaintiff will compensate VanOverbeke for its work.  Id. at p. 21.

Rather, VanOverbeke will be compensated out of any recovery Coughlin Stoia obtains for the class.  Id. at p. 21.  Plaintiff did not know the amount or percentage that VanOverbeke would be compensated.  Id. at p. 81.  But it is clear that it is Coughlin Stoia's intention to provide

VanOverbeke with some portion of any fees that Coughlin Stoia may ultimately receive as lead counsel in this matter.  Upon receiving the Court's approval or award of its fees in this case, Coughlin Stoia will then decide in its sole discretion what portion of those fees will be paid to VanOverbeke.

Despite the Reform Act's mandate to supervise and control counsel in securities cases, Plaintiff did not seem to know whether VanOverbeke and Coughlin Stoia had any separate written agreement regarding the division of fees.  Id. at p. 82.

No matter how one characterizes the contemplated payments between Coughlin Stoia and VanOverbeke, this fee arrangement casts serious doubt on the adequacy of Plaintiff and its choice of counsel for three reasons.

*First*, payments made to Plaintiff's general counsel are, practically speaking, payments to Plaintiff.  Lead counsel cannot circumvent the Reform Act's prohibition against payments to plaintiffs simply by sending their payments via this circuitous route.  In light of past abuses where professional plaintiffs were paid an undisclosed "bonus" by lead counsel, the Reform Act now requires that a plaintiff seeking to serve in a representative capacity must sign a sworn certification which "states that the plaintiff will not accept any payment for serving as a representative party . . . beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court."  15 U.S.C. § 78u-4(a)(2)(A)(vi); see also id. § 78u-4(a)(4).

Any contingency fee payment to VanOverbeke in this case would, however, confer an unsanctioned financial benefit on Plaintiff beyond its pro rata share of any class recovery.  By virtue of the proposed arrangement, Plaintiff's general counsel will be able to provide continuing legal services and advice on this matter at absolutely no cost to Plaintiff.  Plaintiff is in effect getting its personal counsel's fees paid by Coughlin Stoia as "payment for serving as a

representative party." The fact that Plaintiff has agreed to these payments to its general counsel, which violate its own certifications in this case, further demonstrates that Plaintiff is not an adequate representative.

*Second*, Plaintiff describes VanOverbeke's role as one where VanOverbeke serves as Coughlin Stoia's contact for Plaintiff. See Powell Dep. at p. 22.[4] But the Reform Act contemplates that the actual client should control the litigation and supervise the lawyers. See Shiring, 244 F.R.D. at 315. Plaintiff's assignment of its responsibilities under the Reform Act to VanOverbeke constitutes yet another problematic decision by Plaintiff, illustrating that it lacks the proper motivation to represent the proposed class. VanOverbeke is entirely beholden to Coughlin Stoia for all of its fees and, as a result, cannot be expected to exercise any independent judgment or oversight of Coughlin Stoia, who is the one who will determine how much VanOverbeke will be paid.

As the Fifth Circuit recognized in Feder v. Electronic Data Systems Corp., 429 F.3d 125 (5th Cir. 2005), an "unusual fee arrangement" between an outside lawyer and class counsel is "troubling" where, as here, the outside lawyer's fees are contingent on the outcome of the case and paid at the discretion of class counsel. Id. at 133. This type of arrangement gives rise to the concern that the outside lawyer will be "a puppet of class counsel" and focused only on "keeping class counsel happy." Id.

*Third*, the proposed fee arrangement in this case cannot possibly be justified by the suggestion that these payments relate to VanOverbeke's work on behalf of the entire class of investors. First and foremost, this argument fails because, at present, VanOverbeke does not

---

[4] Mr. Powell also testified that he is the other main contact for Coughlin Stoia at the System. But the only time Mr. Powell can recall speaking with anybody at Coughlin Stoia was to prepare for his deposition. See Powell Dep. at p. 92.

represent the proposed class and has shown absolutely no interest in seeking this responsibility. VanOverbeke has appeared only on Plaintiff's Motion for Class Certification and is listed only as counsel for Plaintiff. Secondly, for VanOverbeke to represent the proposed class, the firm would need to seek and receive this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) (noting that "[t]he most adequate plaintiff shall, *subject to the approval of the court*, select and retain counsel to represent the class.") (emphasis added). No such motion has been filed here.

In assessing the adequacy of the proposed representative and its counsel, courts do not tolerate even the appearance of a conflict of interest. See, e.g., Fechter v. HMW Indus., 117 F.R.D. 362, 364-65 (E.D. Pa. 1987) (holding that the issue is not whether class counsel will *actually* be an effective representative for the class, but whether an *appearance* of impropriety exists if the firm is permitted to serve as class counsel); Susman v. Lincoln Am. Corp., 561 F.2d 86, 88 (7th Cir. 1977) (holding that it is the specter of conflict of interest which moves the court to deny class certification and not the actuality of such a conflict).

Numerous courts have found that a named plaintiff is an inadequate representative where there exists a close personal or business relationship between the plaintiff and class counsel. See, e.g., Spagnola v. Chubb Corp., No. 06 Civ. 9960(HB), 2010 WL 46017, at *16 (S.D.N.Y. Jan. 7, 2010) (Exhibit 5 hereto) (plaintiff could not represent proposed class because, inter alia, of his close friendship with his lawyer whose firm sought to represent the class); Drimmer v. WD-40 Co., 343 F. App'x 219, 221 (9th Cir. 2009) (plaintiff was inadequate class representative where he had both a personal relationship and a landlord-tenant relationship with proposed class counsel).

The concern is that the plaintiff's decisions "may not be based on the best interests of class members, but on the best interests of [its] attorney." Drimmer, 343 F. App'x at 221. In

other words, "the possibility that plaintiff may benefit when his attorneys benefit . . . by helping a business associate at the expense of the class [] casts doubt on whether plaintiff will fairly and adequately protect the interests of the entire class." Shields v. Wash. Bancorporation, No. 90-1101, 1991 WL 221940, at *2 (D.D.C. Oct. 10, 1991) (Exhibit 6 hereto).

Based on the foregoing, Plaintiff has failed to meet the requisite showing of adequacy of representation, and, thus, Plaintiff's Motion must be denied.

### C.  **Plaintiff Fails to Show That the Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

"Rule 23(b)(3) requires a proposed class to establish that 'common issues predominate over individual ones and that a class action [is] superior to other available methods of adjudication.'" Pearce v. UBS PaineWebber, No. 3:02-2409-17, 2004 WL 5282962, *7 (D.S.C. Aug. 13, 2004) (quoting Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003)). Because the "predominance requirement under Rule 23(b)(3) is 'far more demanding' than the commonality requirement of Rule 23(a)," the Court should "delve more deeply into the underlying merits of the litigation to determine whether or not the requirements of Rule 23(b)(3) have been satisfied." Id. at *7 - *8.

A court may not decide merits at the class certification stage. Gariety, 368 F.3d at 366. But the Court must consider whether a trial on the merits would be "manageable" under Rule 23(b)(3). Windham, 565 F.2d at 65. "[T]he issue of manageability of a proposed class action is always a matter of 'justifiable and serious' concern for the trial court and peculiarly within its discretion." Id.

For a class action to be "manageable," the trial on the merits would need to be possible using class-wide proof of the requisite elements. Gunnells, 348 F.3d at 434 – 35. "Class certification is not appropriate if individualized treatment of essential elements of the cause of

action is required." <u>Pearce</u>, 2004 WL 5282962, at *8. If the requisite elements are not subject to class-wide methods of proof, there would need to be individual "mini-trials of an overwhelming large number of individual claims … and [it would] render the case unmanageable as a class action." <u>Windham</u>, 565 F.2d at 68.

Accordingly, to decide whether a proposed class action would be manageable under Rule 23(b)(3), the starting point of the analysis is the essential elements of the cause of action. <u>Id.</u>; <u>see also</u> <u>Pearce</u>, 2004 WL 5282962, *8. To establish liability under Section 10(b) and Rule 10b-5, the primary cause of action at issue here, "'plaintiff must prove that, in connection with the purchase or sale of a security, (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused plaintiff's damages.'" <u>Pearce</u>, 2004 WL 5282962, at *8 (quoting <u>Longman v. Food Lion, Inc.</u>, 197 F.3d 675, 682 (4th Cir. 1999)). Here, Plaintiff has the burden to establish that Rule 23(b)(3) is satisfied, and, to satisfy Rule 23(b)(3), Plaintiff must show that class-wide proof can be presented to allow a manageable trial on these elements. <u>Windham</u>, 565 F.2d at 64 – 65.[5]

Of particular importance here are the last two elements -- reliance and injury -- which are "two forms of causation implied by the federal courts as elements of the Rule 10b-5 claim." <u>Pearce</u>, 2004 WL 5282962, at *8. "Reliance and injury are often referred to, respectively, as 'transaction causation' and 'loss causation.'" <u>Id.</u> "The Fourth Circuit requires a plaintiff to establish both reliance and economic loss to prevail on the Rule 10b-5 claim." <u>Id.</u>

Thus, at the class certification stage, the Court must determine "whether the proposed class is entitled to a presumption of reliance or injury (economic loss)." <u>Id.</u> As explained below,

---

[5] Again, the Court should not be focused on whether the class-wide proof would prevail on the merits, but rather whether class-wide evidence exists so that thousands and thousands of individual mini-trials are unnecessary.

Plaintiff has failed to show that it is entitled to either the presumption of reliance or has suffered any economic loss.  Accordingly, Plaintiff's Motion should be denied for failure to meet its burden with respect to Rule 23(b)(3).

### 1.     Plaintiff Fails to Show a Presumption of Reliance.

The Supreme Court recognized in <u>Basic</u> that proof of individualized reliance from each class member "effectively would have prevented" the plaintiff from establishing the predominance requirement of Rule 23(b)(3).  <u>Basic, Inc. v. Levinson</u>, 485 U.S. 224, 242 (1988).  Thus, the Court held that a plaintiff may prove the reliance element of a Rule 10b-5 action through the "fraud-on-the-market" rebuttable presumption of reliance.  <u>Id.</u> at 241.

"Application of the reliance presumption is not … automatic in all federal securities-fraud actions." <u>Gariety</u>, 368 F.3d at 364.  "To gain the benefit of the presumption, a plaintiff must prove '(1) that the defendant made public misrepresentations; (2) *that the misrepresentations were material*; (3) that the shares were traded on an efficient market'; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed." <u>Id.</u> (emphasis added) (quoting <u>Basic</u>, 485 U.S. at 248 n. 27).

Plaintiff tries to substitute bulk for substance by devoting six pages of its Motion to a discussion of the reliance presumption.  <u>See</u> Plaintiff's Motion at pp. 19 – 25.  With the exception of one paragraph, all six of these pages explain the third element of market efficiency, which Defendants do not dispute for purposes of argument.

But, even if one assumes market efficiency, that assumption does not speak to the other requisite elements.  Nor can Plaintiff's passing references to efficiency cure Plaintiff's abject failure to make any showing that Defendants' alleged misrepresentations were material.  With respect to the requisite showing of materiality, Plaintiff points only to the allegations made in the

Amended Complaint.  <u>See</u> Plaintiff's Motion at p. 19.  But, as Judge Anderson held, "[u]nder <u>Gariety</u>, a plaintiff's mere allegations are not sufficient to withstand the analysis in which this court must engage at the class certification stage."  <u>Pearce</u>, 2004 WL 5282962, at *11; <u>see also</u> <u>Safety-Kleen</u>, 2004 WL 3115870, at *4.

"If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order."  <u>Gariety</u>, 368 F.3d at 365.

Thus, Plaintiff must come forward with some evidence – beyond the pleadings – that the alleged misrepresentations were material.  Unless Plaintiff can point to such evidence, the Court cannot determine that a trial on a class-wide basis would be appropriate or manageable under Rule 23.  Plaintiff has wholly failed to meet this burden in its Motion; accordingly, the Motion fails to establish an essential element of the presumption of reliance.  Because Plaintiff has not proven by a preponderance of the evidence that it is entitled to the presumption of reliance, individual issues of reliance predominate and Plaintiff's Motion must be denied.  <u>Pearce</u>, 2004 WL 5282962, at *10.

## 2.    **Plaintiff Fails to Show Economic Loss.**

To satisfy Rule 23(b)(3), Plaintiff must "establish[] economic loss on a class-wide basis." <u>Pearce</u>, 2004 WL 5282962, at *10.  Economic loss, also known as loss causation, "'demonstrates that the fraudulent misrepresentation actually caused the loss suffered.'"  <u>Id.</u> at *8 (quoting <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 173 (3d Cir. 2001)).  In the <u>Dura</u> decision, the Supreme Court emphasized the importance of the loss causation element of a securities fraud claim.  <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 343 (2005).  Given the focus on loss causation in <u>Dura</u>, it is particularly important that a plaintiff in a securities fraud

case show that it will be able to prove loss causation on a class-wide basis.

Indeed, where a plaintiff fails to establish loss causation on a class-wide basis, it is proper to deny class certification. Pearce, 2004 WL 5282962, at *11 (denying class certification because plaintiff failed to demonstrate that economic loss could be established on a class-wide basis); see also Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (Local 66), 579 F.3d 401 (5th Cir. 2009) (affirming denial of class certification where plaintiff failed to demonstrate loss causation); In re Flag Telecom Holdings Ltd. Sec. Litig., 574 F.3d 29 (2d Cir. 2009) (excluding from class those plaintiffs who failed to put forth sufficient evidence to establish loss causation); Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261 (5th Cir. 2007) (holding that plaintiffs must establish loss causation to be entitled to class certification); DeMarco v. Lehman Bros., Inc., 222 F.R.D. 243 (S.D.N.Y. 2004) (holding that plaintiffs must produce prima facie evidence that the alleged misrepresentations materially and measurably impacted the market price).

To establish loss causation, Plaintiff cannot "simply offer[] evidence of any decrease in price following the release of negative information." Fener, 579 F.3d at 407 (quoting Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 665 (5th Cir. 2004)). This is so because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." Dura, 544 U.S. at 343.

"[Plaintiff] instead must show that the false statement causing the increase was related to the statement causing the decrease." Fener, 579 F.3d at 407. In other words, Plaintiff "must demonstrate that … the cause of the decline in [Sonoco's stock] price is due to the revelation of

the truth and not the release of unrelated negative information." Oscar, 487 F.3d at 265.

Here, Plaintiff alleges that Sonoco's stock price was artificially inflated because Sonoco failed to disclose the existence of price concessions in the Flexible Packaging Division. See Amended Complaint, ¶ 49. Thus, to establish loss causation, Plaintiff would need to show that the disclosure of price concessions caused Sonoco's stock price to decline. See Fener, 579 F.3d at 407; Oscar, 487 F.3d at 265. Even though the Court cannot decide whether loss causation actually existed at the class certification stage, Plaintiff must be able to show evidence it would adduce at trial so that manageability under Rule 23(b)(3) can be established. See Windham, 565 F.2d at 65; Pearce, 2004 WL 5282962, at *8.

This requisite showing, however, is entirely absent from Plaintiff's Motion. The only matter beyond the pleadings in Plaintiff's Motion is John Finnerty's (Plaintiff's expert) opinion that the stock price decline that occurred after Sonoco issued press releases on July 20, 2007, and September 18, 2007, was a "statistically significant" stock price drop.

Even Finnerty, however, admitted in his deposition that his opinion on the statistically significant stock price drop was not sufficient to establish loss causation. See Deposition of John Finnerty ("Finnerty Dep.") at pp. 42 – 43 (Exhibit 7 hereto). Finnerty, of course, could not have testified otherwise because, as noted above, "evidence of any decrease in price following the release of negative information" is plainly insufficient to establish loss causation. Fener, 579 F.3d at 407.

Loss causation requires evidence that "(1) that the negative truthful information causing the decrease in price is related to an allegedly false, non-confirmatory positive statement made earlier and (2) that it was more probable than not that it was this negative statement, and not other unrelated negative statements, that caused a significant amount of the decline." Fener, 579

F.3d at 407.  Because Plaintiff has adduced absolutely no evidence on this point, it has failed to satisfy its burden under Rule 23.  Gariety, 368 F.3d at 365-67; Pearce, 2004 WL 5282962, at *8.

Here, to present the Court with an adequate record under Rule 23, Plaintiff would need to have some evidence (1) that Sonoco disclosed the existence of price concessions and (2) that it was more probable than not that it was the disclosure of price concessions, and not other unrelated negative statements, that caused a significant amount of the decline.  It is undisputed that Sonoco disclosed the existence of price concessions in its July 20, 2007, press release[6] and the investors' conference call[7] held on the same day.  But this disclosure alone cannot establish loss causation because Sonoco also disclosed several other pieces of negative information that were unrelated to the alleged fraudulent statements at issue here.

For example, Sonoco's July 20, 2007, press release contained several pieces of other unrelated negative statements, including (1) that GAAP diluted EPS for the second quarter of 2007 was down from the same quarter in 2006; (2) the operating environment for Sonoco was challenging because of "high raw material and other costs;" (3) Sonoco had lower than expected volumes; (4) productivity in the Consumer Packaging Segment was "negatively impacted by operational issues in flexible packaging;" and (5) base operating profit in the Consumer Packaging Segment declined in part due to an unfavorable change in the mix of business and rising labor and other costs.

In the July 20, 2007, conference call referenced in the Amended Complaint, Sonoco disclosed other negative information about the Flexible Packaging Division that was wholly unrelated to the price concessions at issue in this case.

---

[6]  A copy of Sonoco's July 20, 2007, press release is attached hereto as Exhibit 8.
[7]  A copy of the transcript from Sonoco's July 20, 2007, investors' conference call is attached hereto as Exhibit 9.

> We did experience a lot of turmoil in flexibles. Some of that was caused by production that was shifting around to accommodate the launch of a new generation of snack 'n seal. And by moving that production around, we did have negative productivity, and that was largely in the form of high scrap. We also had high freight costs. We had high cylinder and plate costs, and in addition to that we had the start up of two new flex-o presses, plus one other press that was installed earlier in the year and wasn't up to speed. So these were all the factors that influenced flexibles performance during the quarter.

See Tr. of Sonoco's July 20, 2007, Conference Call at pp. 2 – 3 (Exhibit 9 hereto).

As set forth in the report of Defendants' expert, Dr. Cathy Niden[8], Finnerty's reliance on a stock price drop following the July 20, 2007, release of information and nothing else does not establish loss causation because Finnerty did not perform any analysis to identify the portion of the stock price drop allegedly attributable to Sonoco's announcement of price reductions in the Flexible Packaging Division. See Dr. Niden Report at ¶ 21 (Exhibit 10 hereto). As Dr. Niden indicates, an economic loss causation analysis as it relates to the July 20, 2007, disclosure must, at minimum, acknowledge that multiple negative news items were disclosed that day and present evidence to distinguish the contribution, if any, of each of the separate news items to the stock price drop. Id.

Without such an analysis, it is nothing short of bald speculation as to what news, among the multitude disclosed on July 20, 2007, caused the share price decline. Because Finnerty's report makes no attempt to analyze loss causation in a manner consistent with Dura and the other case law cited above, it cannot serve as the requisite showing needed to satisfy the Court that proof of loss causation may be made on a class-wide basis or that this case can be manageable as a class action as required by Rule 23.

Dr. Niden's comments are fully consistent with the case law. In Oscar, plaintiffs contended that the defendant's fourth quarter correction of misstatements related to the number

---

[8]  A copy of the Expert Report of Cathy M. Niden, Ph.D., is attached hereto as Exhibit 10.

of telephone lines the defendant had installed followed by a 28% drop in the defendant's stock price was sufficient to establish loss causation for class certification purposes. Oscar, 487 F.3d at 270 – 271. Noting that the telecommunications industry as a whole had plunged by 90% during the class period and that the announcement related to correct number of telephone lines also included other negative news relating to earnings and revenue covenants, the Fifth Circuit held that plaintiffs failed to establish loss causation. Id. Specifically, plaintiffs had not carried their burden to show that it was more probable than not that it was the negative statement related to the number of telephone lines, and not other unrelated negative statements, that caused a significant amount of the decline. Id.

Plaintiff's reliance on Sonoco's September 18, 2007, press release[9] likewise is not sufficient to establish loss causation in this case. Here, too, the initial burden on Plaintiff is to show that the press release at issue corrected previously misleading or omitted information, and that the market reacted to that disclosure. Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 187 (4th Cir. 2007). The September 18, 2007, press release cannot support a showing of loss causation under any circumstances because the press release does not even address price concessions. Where the alleged disclosure contains no information correcting an alleged misrepresentation or omission, there can be no loss causation as a matter of law. Hunter, 477 F.3d at 187.

Because Plaintiff has not established that loss causation with respect to either the July 20, 2007, press release or the September 18, 2007, press release may be established on a class-wide basis, Plaintiff's Motion must be denied. See Pearce, 2004 WL 5282962, at *11.

---

[9] A copy of Sonoco's September 18, 2007, press release is attached hereto as Exhibit 11.

D.    **The Class Period Should End on July 20, 2007.**

At the class certification stage, courts "must determine the appropriate class period."

Simpson v. Specialty Retail Concepts, 149 F.R.D. 94, 103 (M.D.N.C. 1993).  To be sure, at the

class certification stage, courts often critically evaluate the length of a proposed class period and

shorten that time period if appropriate under the facts of the case.  Id. at 103 – 104; see also In re

Nature's Sunshine Prods. Inc. Sec. Litig., 251 F.R.D. 656 (D. Utah 2008); In re Fed. Nat'l

Mortgage Ass'n Sec., Derivative, & "ERISA" Litig. ("Fannie Mae"), 247 F.R.D. 32, 38-41

(D.D.C. 2008); In re Data Access Sys. Sec. Litig., 103 F.R.D. 130 (D.N.J. 1984).

Defendants do not believe that any class should be certified here for the reasons set forth

above.  If, however, the Court is inclined to certify a class, the class period should end on July

20, 2007, which is the date that Sonoco indisputably disclosed the existence of price concessions

– the very information that Plaintiff alleges Defendants fraudulently concealed from the market.

The law on the closing date of a class period is unmistakable – "[t]he class period should

end when curative information is publicly announced or otherwise effectively disseminated to

the market."  Simpson, 149 F.R.D. at 103.  "[T]he test is a preliminary merits determination

whether the facts which underlie the gravamen of plaintiff's complaint continue to represent a

reasonable basis on which the individual purchaser on the market would rely."  Id.

Where the allegedly false information issued by the Company has been publicly

corrected, the class period should end on the date of that disclosure because it is unreasonable for

class members to rely on the alleged false statements after the "truth" has been revealed.

Simpson, 149 F.R.D. at 104 (shortening class period to end on date of corrective disclosure);

Nature's Sunshine, 251 F.R.D. at 667 (same); Fannie Mae, 247 F.R.D. at 40 – 41 (same); Data

Access, 103 F.R.D. at 144 (same).

Here, the gravamen of Plaintiff's Amended Complaint is that Defendants failed to

- 24 -

disclose price concessions in the Flexible Packaging Division.  See Amended Complaint, ¶ 49.

Thus, the date on which the existence of these price concessions was disclosed is the proper date

on which to end the class period.  Simpson, 149 F.R.D. at 103.

The date on which the price concessions were disclosed is July 20, 2007.  Sonoco's press

release on this date revealed that there were "price reductions in certain flexible packaging."  See

July 20, 2007, press release.  Sonoco's conference call held on the same day also disclosed the

existence of price reductions:

> GHANSHAM PANJABI:  In your press release you talked about some price reductions in certain flexible packaging and I'm not sure if you mentioned that on the call.  But could you give us more color on that, please?
>
> HARRIS DELOACH (CEO OF SONOCO):  Ghansham, last year, I guess in probably the third or fourth quarter on a contract with one of our major customers there were price reductions given.  They were baked into our guidance.  They were baked into our plan, so while on a year-over-year basis – obviously that was a difference there, but they had been baked into our guidance.

See Tr. of Sonoco's July 20, 2007, Conf. Call at p. 5 (Exhibit 9 hereto).

Thus, there can be no doubt that as of July 20, 2007, the market was aware of the

existence of the price concessions.  After this date, it would be unreasonable for any class

member to rely on statements rendered allegedly misleading by Defendants' alleged failure to

disclose price concessions because the price concessions had been disclosed at that point.  As set

forth in Dr. Niden's report, class members were on notice of the existence of price concessions

as of July 20, 2007, and information about the price reductions was fully reflected in Sonoco's

stock price by the close of trading on July 20, 2007.  See Dr. Niden Report at ¶ 24 (Exhibit 10

hereto).

Any investor who bought Sonoco shares after the July 20, 2007, announcement

necessarily bought shares at a price that fully reflected the price concession information.  These

purchasers, therefore, cannot claim that they were harmed by any price inflation due to the alleged non-disclosure of price concessions.  Accordingly, the members of the proposed class who purchased their Sonoco shares after July 20 face a burden of proof that is substantially different (and more difficult) than what earlier purchasers must demonstrate to prevail.

Plaintiff attempts to extend the class period to September 18, 2007, the date on which Sonoco announced revised earnings guidance.  But this attempt cannot be justified because no "new" information regarding the price concessions was disclosed in the September 18, 2007, press release.  In fact, the September 18, 2007, press release does not even mention price reductions or concessions.  It is, therefore, simply not possible to transform this release into some kind of further curative disclosure that revealed "the truth" about price concessions.  See, e.g., Hunter, 477 F.3d at 187 (no claim may exist where alleged curative disclosure did not disclose any facts regarding the alleged fraud).

Plaintiff's proposed extension of the class period also raises concerns regarding Plaintiff's conflict of interest with members of the proposed class.  The Fourth Circuit has "long interpreted [Rule 23] to preclude class certification" where conflicts of interest exist.  Broussard, 155 F.3d at 337 (reversing grant of class certification where class conflicts existed).  As the Fourth Circuit held,

> The Supreme Court "has repeatedly held [that] a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  The premise of the class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members.

Id. at 338 (citations omitted) (quoting E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)).

Here, Plaintiff does not possess undivided loyalties to absent class members because (a)

Plaintiff's alleged damages are more if the class period ends on September 18, 2007, as opposed to July 20, 2007, but (b) there are potential class members whose alleged damages are more if the class period ends on July 20, 2007, as opposed to September 18, 2007.

This conflict of interest is made apparent through a comparison of the alleged damages of Plaintiff and proposed class member VEBA.  By way of reminder, Plaintiff filed a false certification indicating that VEBA's holdings in Sonoco stock were those of Plaintiff, but Plaintiff was forced to admit at its deposition that VEBA's holdings were not those of Plaintiff. See Powell Dep. at pp. 69 – 71 (Exhibit 3 hereto); see supra at pp. 10 – 11.

As set forth in Dr. Niden's report, Plaintiff has an interest in extending the class period through September 18, 2007, because the extended period results in ***higher*** alleged damages than if the class period ended on July 20, 2007.  See Dr. Niden Report at ¶¶ 30 – 32 (Exhibit 10 hereto).  Proposed class member VEBA, on the other hand, would disagree with Plaintiff's legal position that the class period should end on September 18, 2007.  This is because an extension of the class period through September 18, 2007, results in ***lower*** alleged damages for VEBA than if the class period ended on July 20, 2007.  Id.

The conflict of interest that exists between Plaintiff and proposed class members would become a non-issue if the Court determined that the proper end date for the class period is July 20, 2007, the date on which Sonoco disclosed the existence of price concessions.  Because an end date of July 20, 2007, is the proper end date as the date on which curative information was announced (see, e.g., Simpson, 149 F.R.D. at 104) and because it has the added benefit of resolving class conflict issues, the class period, if any, should end on July 20, 2007.

III.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Lead Plaintiff's Motion for Class Certification be denied.  In the alternative, to the extent that that this Court elects to certify a class in this case, Defendants request that the class period end on July 20, 2007.

Respectfully submitted, this 1st day of March, 2010.

/s/ Robert Y. Knowlton
William C. Boyd – D.S.C. No. 1432
Manton M. Grier – D.S.C. No.  2461
Robert Y. Knowlton – D.S.C. No. 2380
HAYNSWORTH SINKLER BOYD, P.A.
The Capital Center
1201 Main Street, Suite 2200 (29201)
Post Office Box 11889 (29211)
Columbia, South Carolina
(803) 779.3080

Todd R. David – Ga. Bar No. 206526
John A. Jordak, Jr. – Ga. Bar No. 404250
Lisa R. Bugni – Ga. Bar No. 143077
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881.7000

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, I served a true and correct copy of the within and foregoing DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION upon the following counsel of record as follows:

<table>
<tr><td>William E. Hopkins, Jr.<br>HOPKINS & CAMPBELL, LLP<br>1122 Lady Street<br>Suite 1010<br>Columbia, South Carolina 29201</td><td><em>By CM/ECF</em></td></tr>
<tr><td>Samuel H. Rudman<br>David A. Rosenfeld<br>Mario Alba Jr.<br>COUGLIN STOIA GELLER RUDMAN &<br>ROBBINS LLP<br>58 South Service Road, Suite 200<br>Melville, New York 11747</td><td><em>By CM/ECF</em></td></tr>
<tr><td>Jack Reise<br>Michael Greenwald<br>Stephen Astley<br>COUGLIN STOIA GELLER RUDMAN &<br>ROBBINS LLP<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, Florida 33432</td><td><em>By CM/ECF</em></td></tr>
</table>

This 1st day of March, 2010.

/s/ Robert Y. Knowlton
Robert Y. Knowlton – D.S.C. No. 2380