UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | |
|---|---|
| CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>vs.<br><br>SONOCO PRODUCTS CO., HARRIS E. DELOACH JR., and CHARLES J. HUPFER,<br><br>     Defendants. | No. 4:08-cv-02348-TLW-SVH<br><br><u>CLASS ACTION</u> |

**LEAD PLAINTIFF CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM'S REPLY MEMORANDUM IN SUPPORT OF ITS <u>MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   REPLY ARGUMENT .........................................................................................2

    A.    Defendants Do Not Rebut the Substantial Authority Cited by Plaintiff ..................2

    B.    Plaintiff is an Adequate Class Representative ..........................................................4

        1.    Plaintiff Has Diligently Prosecuted Its Case .................................................4

        2.    Defendants Grossly Mischaracterize Plaintiff's Certification .....................7

        3.    Plaintiff's Fee Arrangement with Counsel is Entirely Appropriate.............9

    C.    Plaintiff Satisfies the Requirements of Rule 23(b)(3)............................................10

        1.    Plaintiff Has Demonstrated Class-wide Reliance ......................................10

        2.    Loss Causation is NOT an Element on Class Certification .......................13

    D.    The Class Period Properly Concludes on September 18, 2007 .............................14

III.   CONCLUSION...................................................................................................17

Lead Plaintiff City of Ann Arbor Employees' Retirement System ("Plaintiff") respectfully submits this reply in support of its Motion for Class Certification ("Motion") [Dkt. No. 63].

## I.    INTRODUCTION

Rather than meaningfully contest whether Plaintiff has satisfied the requirements of Fed. R. Civ. P. 23, which they cannot do,[1] Defendants oppose certification first by attacking Plaintiff's credibility through a series of irresponsible distortions and unfounded accusations. But as the court in *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397 (D. Mass. 2007)[2] aptly noted:

> Defendants are playing the role of the proverbial fox guarding the henhouse. Courts have recognized that defendants often seek to cast aspersions on the adequacy of class representatives and counsel while truly seeking to have no class certified at all.

*Id.* at 410-11.[3] That is exactly the case here – Defendants simply want to ensure that no class recovers the losses sustained as a result of Defendants' fraudulent activity. Thus, in a thinly veiled attempt to avoid being held responsible for their fraud, Defendants set forth an inaccurate and grossly misleading factual record in an effort to cast doubts on Plaintiff's adequacy as a class representative. Putting these *ad hominem* attacks aside, the record evidence amply demonstrates that Plaintiff is a diligent fiduciary to the proposed Class and its understanding of and involvement in this case renders it a more than adequate class representative. *See In re Veeco Instruments, Inc. Sec.*

---

[1] Defendants do not dispute that Plaintiff has satisfied the numerosity, commonality, and typicality prongs of Rule 23(a), nor do they dispute that Lead Counsel satisfy Rule 23(g).

[2] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

[3] *See also Kline v. Wolf*, 702 F.2d 400, 402 (2d Cir. 1983) ( "[A] court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation."); *Abelson v. Strong*, No. 85-0592, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) ("A court, recognizing this irony, must be suspicious of defendants' efforts to protect unnamed plaintiffs when that protection will, as a practical matter, leave them without a remedy.").

*Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) (rejecting argument that proposed class representative was inadequate and finding it "odd that defendants would set themselves up as champions of the class interests by making such an argument.").

Knowing their attacks on Plaintiff fall woefully short, Defendants next urge the Court to ignore Fourth Circuit law and instead impose a more onerous standard on certification than has ever been adopted by a court in this Circuit. To that end, Defendants argue certification should be denied because Plaintiff has not ***proven*** loss causation – an element of its fraud claim – at the class certification stage and, therefore, has not met its burden. *See* Dkt. No. 68 at 18-24. Of course, proving loss causation at the class certification stage is not a prerequisite to certification in the Fourth Circuit, as every court in this circuit to address the question has held. Accordingly, because Plaintiff has satisfied the elements of Rule 23, the Court should certify this action as a class action.

## II.  REPLY ARGUMENT

### A.  Defendants Do Not Rebut the Substantial Authority Cited by Plaintiff

In their opposition, Defendants[4] do not question the litany of cases in this Circuit holding that "[s]ecurities litigation is particularly well suited to class action treatment." *See* Dkt. No. 63 at 5-6. Nor do Defendants even address the two most recent decisions from district courts in this Circuit certifying securities fraud class actions.[5] Rather than do so, Defendants base their opposition largely on the readily distinguishable case of *Pearce v. UBS PaineWebber, Inc.*, 2004 WL 5282962 (D.S.C.

---

[4]   "Defendants" refers to defendants Sonoco Products Company ("Sonoco" or the "Company"), Harris E. DeLoach, Jr. ("DeLoach") and Charles J. Hupfer.

[5]   In those cases – *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83 (E.D.N.C. 2009) and *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101 (E.D. Va. 2009) – the court certified classes under identical causes of action and similar circumstances as those here.

Aug. 13, 2004). While Defendants cite *Pearce* 19 times in their opposition, quantity is no substitute for quality.

*Pearce* involved a factual scenario dissimilar from most securities fraud class actions, including this case. In *Pearce*, the plaintiff alleged that the defendants charged undisclosed trading profits on his and other NASDAQ trades in a scheme involving the plaintiff's local broker, its parent companies, and another subsidiary. *Id.* at *1-*2. Unlike here, the case did not involve fraud perpetrated through public misrepresentations made by a single company trading on a major market. *Id*. The court denied certification over concerns about the individualized inquiries of reliance and economic loss that are absent here. *Id*. at *12-*13. Noting the case's uniqueness, the court in *Pearce* explicitly distinguished its holding from securities fraud class actions like this one:

> [T]he court thinks it appropriate to note that the facts of this case are not those typical of most cases involving securities violations under Rule 10b-5. The typical case involves allegations that a fraudulent material misrepresentation or omission affected a security's value. In those cases, actual damages ("out of pocket losses") are the difference between the fair market value of what the plaintiff paid at the date of purchase and the fair market value of what he would have received had there been no misconduct. In this case, the material nondisclosure and misrepresentations alleged did not affect the value of the NASDAQ stocks traded. The alleged misconduct may have affected the price, but to show injury, the class must establish that the execution price was not the "best price reasonably available." ***That individualized inquiry is not necessary in most securities fraud cases where the purported fraud artificially inflates the security's value.***

*Id*. at *13. Here, Sonoco's "fraud artificially inflate[d] the security's value," and, as a result, Plaintiff and the Class are entitled to a presumption of reliance under the fraud-on-the-market theory. *Id*. Likewise, damages are easily calculable through market data without resort to individualized inquiries. Thus, Defendants' reliance on *Pearce* is misplaced and the Class should be certified.[6]

---

[6] Defendants also wrongly assert that Plaintiff's Motion "rests almost entirely on the allegations in the Amended Complaint" and, as a result, certification is improper. *See* Dkt. No. 68 at 5. In reality, Plaintiff's Motion is supported by substantial evidence, including the expert declaration

3

**B.     Plaintiff is an Adequate Class Representative**

**1.     Plaintiff Has Diligently Prosecuted Its Case**

Plaintiff is a diligent fiduciary to the proposed Class and has demonstrated a deep understanding of and involvement in this case. Plaintiff's commitment to this case is evidenced by the fact that it produced thousands of pages of documents to Defendants that detail Plaintiff's trades in Sonoco securities, answered Interrogatories, its corporate representative – administrator Willie J. Powell – sat for a deposition where he demonstrated detailed knowledge of the case,[7] and representatives of Plaintiff have met numerous times with its attorneys to stay abreast of the status of the litigation and supervise counsel. There can be no doubt that Plaintiff is an adequate class representative. *See Red Hat*, 261 F.R.D. at 88 (finding the plaintiff to be an adequate class representative); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 369-370 (4th Cir. 2004) (finding that the district court did not abuse its discretion in finding the proposed class

---

of Dr. John D. Finnerty, Ph.D. as well as citations to publicly available press releases and conference call transcripts. To the extent Defendants argue Plaintiff should have supplied additional evidence gathered during discovery in support of its Motion, Defendants are being entirely disingenuous. To be sure, despite serving its First Request for Production on September 3, 2009, Defendants had produced *zero documents* at the time Plaintiff's Motion was due per the parties' stipulated scheduling order. [Dkt. No. 58]. Even today – more than seven months after serving its initial discovery requests – Defendants have only produced a limited number of documents. Thus, it would be manifestly unfair for Defendants to capitalize on their dilatory document production.

[7]     For example, Plaintiff's corporate representative, among other things, correctly identified the Individual Defendants in this action and their job titles (*see* Transcript of Willie J. Powell ("Powell Tr."), a true and correct copy of which is attached hereto as **Exhibit A**, at 26:15-22), knew the case was pending in the District of South Carolina (26:7-14), provided an accurate and detailed description of Sonoco's business (29:22-15; 30:1-4), described the Amended Complaint's allegations fully and explained why Plaintiff believes Sonoco committed securities fraud (30:15-25; 31:1-4; 40:19-22; 41:3-11; 54:13-22), knew Plaintiff's counsel in this case (31:10-25), explained why and how Plaintiff retained Lead Counsel in this matter (33:1-20), knew Plaintiff suffered $50,000 in damages from Sonoco's fraudulent activity (39:8-14), correctly identified the Class Period at issue (59:11-13), explained the procedural posture of the case (58:13-20), and set forth Plaintiff's understanding of and commitment to acting as class representative (59:1-25; 60:1-25).

4

representatives adequate where they had read documents in the case and conferred with counsel).

Despite the detailed testimony by Mr. Powell regarding the Complaint's allegations, Defendants argue, with no support, that "Plaintiff has demonstrated a lack of knowledge regarding the allegations in the complaint." *See* Dkt. No. 68 at 8-9. Rather than identifying a single allegation in the Complaint that Plaintiff did not know (which it could not do), Defendants advance the backwards argument that "Plaintiff's knowledge of this case was derived entirely from counsel" because Plaintiff had a "lack of knowledge of the *other cases* in which Plaintiff is involved." *Id*. at 8. Of course, Defendants fail to mention the obvious point that Mr. Powell – the only person deposed by Defendants – is *not* the plaintiff, but a *representative* of Plaintiff designated in response to a Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6). As such, Mr. Powell had a *duty* to prepare on behalf of Plaintiff[8] and, to that end, Mr. Powell testified that as part of his preparation for deposition he met with counsel and reviewed numerous documents. Powell Tr. at 61-65. Thus, the fact that Mr. Powell prepared with counsel for his deposition is not a reason to disparage Plaintiff. Rather, it was Plaintiff's *obligation* to do so under the Federal Rules. With respect to knowledge of *other cases* involving Plaintiff – a topic hardly relevant to its suitability in this case – Plaintiff provided a full listing of such cases in its responses to Defendants' Interrogatories. Mr. Powell also testified that he was not the primary contact for Plaintiff's securities fraud litigations, but that Plaintiff's chairperson – Nancy Sylvester – fulfilled that role. Powell Tr. at 36:1-16. Thus,

---

[8]  *See, e.g., Poole v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000) ("Moreover, a corporation served with a Rule 30(b)(6) notice of deposition has a duty to 'produce such number of persons as will satisfy the request [and] more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.' *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). 'Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry.' ABA Standards, 19(f) (Duty to Prepare the Witness))."

Defendants disingenuously conclude that Mr. Powell's *personal* knowledge is tantamount to Plaintiff's *institutional* knowledge. Defendants' argument fails.

Left with no legitimate basis to challenge Plaintiff's knowledge of the case, Defendants falsely claim that Plaintiff has deferred the prosecution of this action to counsel. *See* Dkt. No. 68 at 7-8. As their sole support, Defendants point to a provision of Plaintiff's engagement letter stating that counsel will indemnify Plaintiff in certain circumstances. Defendants' argument is a classic *non sequitur*: the indemnification provision has no connection to Plaintiff's ability to prosecute this action, and certainly is not evidence of any abdication of Plaintiff's responsibilities. Furthermore, Defendants' argument is entirely hypothetical as counsel has not paid any award of fees or sanctions imposed against Plaintiff, nor has there been any occasion to do so. More importantly, Mr. Powell testified unequivocally that Plaintiff would be willing to pay any fees and expenses necessary to pursue its claims against Defendants, thus rendering the indemnification provision a non-issue. Powell Tr. at 80:1-15.[9]

Defendants also argue that Plaintiff is inadequate because it "elected to pursue litigation based only on its counsel's investigation and research." *See* Dkt. No. 68 at 9-10. Once again, Defendants conveniently ignore large potions of Mr. Powell's testimony. Mr. Powell testified that Plaintiff's Board of Trustees voted to bring this action at their June 18, 2008 meeting after reviewing the draft complaint and conferring with counsel. Powell Tr. at 37:19-25; 38:1-2; 42:2-5; 44-45. Regardless, while Plaintiff did not personally investigate the underlying facts of the case, such

---

[9] In addition, Mr. Powell testified that Plaintiff is acting as a fiduciary to the Class, which "is one of the highest roles of trust that can be delegated to a person" and that Plaintiff will "act in the best interests" of the injured shareholders by "[m]aking sure as best as we could that everybody is made whole from the losses that they incurred." Powell Tr. at 59:14-21. *See Red Hat*, 261 F.R.D. at 88.

investigation is not required to be an adequate class representative. *See Mills*, 257 F.R.D. at 109 ("A class representative is allowed to rely on counsel to keep him abreast of developments and make strategic decisions in a class action lawsuit.").[10]

The lone case cited by Defendants, *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307 (E.D. Va. 2007), has no relevance here. In *Shiring*, the proposed class representative was found to be inadequate primarily because he had several private, face-to-face meetings with the defendant's chief financial officer. *Id*. at 313-14. The plaintiff also admitted that he learned about the defendant company directly from its CFO and, in particular, they discussed "the value of the stock and where it was going." *Id.* Because the plaintiff based its purchasing decisions largely on direct contacts with the defendant's senior management, the plaintiff was deemed atypical of the members of the proposed class. *Id.* Here, on the other hand, Plaintiff has had no contacts with any of Sonoco's officers or directors and did not rely on any non-public information in making purchasing decisions. Secondarily, the *Shiring* court was concerned about Plaintiff's "lack of knowledge regarding the allegations contained in the Complaint," including the positions held by the individual defendants. *Id.* at 316. In sharp contrast here, Plaintiff has demonstrated a detailed understanding of the Complaint's allegations. *See* n.7, above.

### 2.     Defendants Grossly Mischaracterize Plaintiff's Certification

Underscoring their desperation, Defendants attempt to turn a technical inaccuracy in

---

[10]     *See also In re Southeast Hotel Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 607 (W.D.N.C. 1993) (noting that it "is generally accepted that in securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected."); *In re Ins. Mgmt. Solutions Group, Inc., Sec. Litig.*, 206 F.R.D. 514, 517 (M.D. Fla. 2002) ("The law does not require that [the proposed class representative] understand the details and means by which the Defendants perpetrated the alleged fraud" and representatives are entitled to rely on class counsel); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 696-697 (N.D. Ga. 2002).

7

Plaintiff's stock certification into an indictment of Plaintiff and Mr. Powell – a pastor at Grace Fellowship Church of God and Christ.[11] *See* Dkt. No. 68 at 10-11. What Defendants boldly claim to be a "lack of diligence and candor" is, in reality, a technicality resulting in no prejudice to Defendants. In short, Plaintiff's stock certification attached to the original complaint in this case, Dkt. No. 1, included transactions in Sonoco securities made by VEBA, the City of Ann Arbor Retiree Health Care Benefits Plan and Trust. VEBA is an interrelated health care fund that provides health benefits to the same individuals to whom Plaintiff provides retirement benefits. Powell Tr. at 69-70. Plaintiff and VEBA share the same offices, beneficiaries, trustees, staff, and the same administrator – Mr. Powell. *Id*. In attempting to document all of its transactions in Sonoco securities, Plaintiff included VEBA's trades in Plaintiff's certification. While Plaintiff and VEBA technically are separate legal entities, the inclusion of these trades was not an attempt to deceive the Court, but an attempt to be complete. *See Red Hat*, 261 F.R.D. at 89 (finding that "inconsistencies" on stock certification did not defeat adequacy where they, like here, "were not the result of any intentional misrepresentation on the part of" the plaintiff).[12] Most importantly, and as Defendants do not dispute, Plaintiff purchased Sonoco shares during the Class Period and has standing to pursue its

---

[11]     Powell Tr. at 10:9-16.

[12]     In any event, an error on a stock certification, standing alone, does not render Plaintiff to be non-credible and therefore an inadequate class representative. To be sure, numerous courts have appointed class representatives with serious ***criminal*** histories – far more severe than the situation here with an inadvertent error in a stock certification. *See, e.g., Wood v. Capital One Auto Fin., Inc.*, 2006 U.S. Dist. LEXIS 67513, at *11-*12 (E.D. Wis. Sept. 19, 2006) (certifying class action where lead plaintiff had prior felony conviction); *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986) (noting that "[i]ncarcerated felons have long been certified as class plaintiffs in numerous cases"); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) (certifying class and appointing class representative despite prior indictment for mail fraud and racketeering); *Randle v. SpecTran*, 129 F.R.D. 386, 392 (D. Mass. 1988) (granting motion for class certification where proposed class representative had prior criminal indictments and one conviction).

claims. In addition, Plaintiff provided Defendants with all supporting documentation regarding both Plaintiff and VEBA's trades in Sonoco stock and the certification accurately reflects all such trades.

### 3. Plaintiff's Fee Arrangement with Counsel is Entirely Appropriate

Lastly, Defendants claim – again with no factual or legal support – that Plaintiff has an "unusual" fee agreement with its counsel that amounts to counsel paying Plaintiff for its participation. *See* Dkt. No. 68 at 12-15. Defendants accuse Plaintiff of this illegal and unethical conduct despite Plaintiff's repeated and categorical testimony that it has received no payments from counsel. Powell Tr. at 46:18-20; 47:10-11, 23-25; 49:17-22. Nonetheless, Defendants shamefully argue that payments made to counsel (assuming successful resolution of this case) "are, practically speaking, payments to Plaintiff." Dkt. No. 68 at 12. Defendants are wildly off-base.

First, VanOverbeke Michaud & Timmony, P.C. ("VanOverbeke") is an independent law firm acting as ***outside counsel*** to Plaintiff (among many other clients). Thus, fees collected by VanOverbeke do not financially benefit Plaintiff in any manner. Second, Plaintiff retained ***both*** Robbins Geller Rudman & Dowd LLP (formerly Coughlin Stoia) and VanOverbeke[13] to represent it and the proposed Class in this matter, as Plaintiff's engagement letter specifies. Also as the engagement letter details, the VanOverbeke and Robbins Geller firms have agreed to represent Plaintiff and the Class on a contingency basis, with any recovery of attorneys' fees subject to successful resolution of the case and Court approval. Powell Tr. at 21:3-15. Neither VanOverbeke

---

[13] In an attempt to downplay VanOverbeke's importance in this case, Defendants incorrectly tell the Court that "VanOverbeke has appeared only on Plaintiff's Motion for Class Certification and is listed only as counsel for Plaintiff." Dkt. No. 68 at 14. In truth, VanOverbeke is also listed as counsel for Plaintiff on Plaintiff's opposition to Defendants' motion to dismiss, *see* Dkt. No. 33, is listed as co-counsel with Robbins Geller on Plaintiff's engagement letter, which Plaintiff produced to Defendants, and participated in the defense of Plaintiff's deposition. *See* Ex. A.

9

nor Robbins Geller will receive any fees in connection with this action unless Plaintiff prevails or the matter is settled favorably. This fee arrangement is hardly "unusual" as virtually all securities fraud class actions proceed on a contingency basis.

Third, that VanOverbeke represents Plaintiff in unrelated matters on an hourly basis is of no consequence. Clients and their attorneys routinely utilize different fee arrangements on different matters. The fees VanOverbeke may receive in this case simply have no impact on the hourly rates charged to Plaintiff on separate matters. No conflict of interest exists.[14]

### C. Plaintiff Satisfies the Requirements of Rule 23(b)(3)

#### 1. Plaintiff Has Demonstrated Class-wide Reliance

As set forth in Plaintiff's Motion, to gain the benefit of the presumption of reliance under the fraud-on-the-market theory, a plaintiff must establish: "(1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed." *Gariety*, 368 F.3d at 364. In response, Defendants concede that Sonoco securities traded on an efficient market throughout the Class Period and that Plaintiff purchased the shares after the alleged misrepresentations were made but before the truth was

---

[14] The authority relied upon by Defendants misses the mark as the fee arrangement in this case is transparent and conforms entirely with all ethical rules. Likewise, Defendants cite case law disqualifying a class representative where the class representative has a close personal relationship with his attorney. *See* Dkt. No. 68 at 14. Here, Defendants cite no evidence to suggest there is a close personal relationship of any kind between Plaintiff and any of its counsel.

10

revealed. Dkt. No. 68 at 17-18. However, Defendants argue that Plaintiff has not offered sufficient evidence that the misstatements at issue in this case were material.[15] *See id.*[16]

It cannot be disputed that Defendants touted their supposed "higher selling prices" while failing to inform the market of the price concessions given to several of Sonoco's Flexible Packaging customers and the impact of the same until the end of the Class Period.[17] Indeed, the materiality of Defendants' false statements are self-evident, given their impact on the Company's bottom line. *See* n.24, below. Underscoring their importance to investors is that analysts immediately seized upon the belated disclosure of the existence of the price concessions. In fact, during the Company's July 20, 2007 conference call with analysts, Wachovia Capital Markets analyst Ghansham Panjabi specifically questioned Defendant DeLoach about the price reductions in Flexible Packaging and their impact on Sonoco's business. *See* Dkt. No. 68-9 at 5. In an analyst report issued on the same day and attached hereto as **Exhibit B**, Wachovia highlighted the price concessions as a reason for the shortfall in Flexible Packaging, writing that the undercutting on price was "***very unlike Sonoco***." Likewise, just three days later, Wachovia again highlighted the price concessions on the front page

---

[15] On this point, Defendants simply rehash the same arguments on materiality already rejected by this Court in conjunction with the motion to dismiss. *See* Dkt. No. 52 at 6 (discussing materiality of Defendants' statements and denying Defendants' motion to dismiss in its entirety).

[16] *In re Safety-Kleen Corp. Bondholders Litig.*, 2004 WL 3115870 (D.S.C. Nov. 1, 2004), attached as Exhibit 2 to Defendants' opposition, has no bearing here. The court in *Safety-Kleen* found the bonds at issue did not trade in an efficient market and, as a result, the plaintiffs were not entitled to utilize the fraud-on-the-market theory. *Id.* at *8. Here, Defendants have conceded that Sonoco traded in an efficient market throughout the Class Period. *See* Dkt. No. 68 at 17.

[17] The existence of the price concessions is also not disputed. During discovery, Plaintiff has learned about the substantial size of the price concessions. While Defendants have designated such information confidential, should the Court wish to be provided with this discovery, Plaintiff can file it under seal.

of its July 23, 2007 analyst report, attached hereto as **Exhibit C**. Keen analyst interest in these concessions is strong evidence of their importance to investors.

Further demonstrating the materiality of the price concessions is Defendant DeLoach's admission on July 20, 2007 that the price concessions were "baked into [Sonoco's] guidance." *See* Dkt. No. 68-9 at 5. Defendants cannot on the one hand claim the price reductions were completely immaterial to investors while at the same time admitting the concessions were expected to impact financial performance. Likewise, Sonoco's April 20, 2007 press release falsely touted the Consumer Packaging division's "higher selling prices."[18] Defendants' inclusion of this statement in their quarterly earnings release stands in stark contrast to their claim such information is immaterial.

Finally, the intense negative market reaction to the disclosure of the price concessions and their impact demonstrates their materiality to investors.[19] As Dr. Finnerty explained in his declaration supporting Plaintiff's Motion, following the Company's July 20, 2007 and September 18, 2007 revelations regarding the existence of the price concessions and their impact on the Company's bottom line, respectively, Sonoco's share price dropped in a statistically significant

---

[18]  A true and correct copy of Sonoco's April 20, 2007 press release is attached hereto as **Exhibit D**.

[19]  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997) (noting that, in an efficient market, "the concept of materiality translates into information that alters the price of the firm's stock."); *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (same).

fashion.[20] *See* Dkt. No. 63-3 at ¶¶32-34, 54. These dramatic stock price reactions demonstrate that the market viewed Defendants' disclosures as material.[21] *See* Dkt. No. 63-3 at ¶¶32-34, 54.

### 2.     Loss Causation is NOT an Element on Class Certification

In an attempt to re-write Fourth Circuit law, Defendants advance the Fifth Circuit's decision in *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 269 (5th Cir. 2007) and its progeny to argue that Plaintiff must, in addition to the Rule 23 requirements, prove loss causation (one element of a §10(b) Exchange Act claim) at the class certification stage. *See* Dkt. No. 68 at 18-23. To be clear, in this Circuit, Plaintiff is ***not required*** to prove loss causation at the class certification stage. The Fourth Circuit has not adopted *Oscar* and likely would not because it deviates from the overwhelming weight of authority, including the Supreme Court's decision in *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988), and rejects the well-accepted presumption of reliance in a fraud-on-the-market case in favor of an additional burden of proof on class plaintiffs. Indeed, numerous courts have already concluded as much, including ***all*** of the district courts in the Fourth Circuit that have addressed *Oscar*. As the court held in *Mills*:

> Requiring a plaintiff to 'prove' loss causation at class certification risks converting class certification into a hearing on the merits. In cases where the class hearing precedes discovery, this could require a court to rule on factual issues prior to meaningful discovery. In addition, Rule 23(a) – by its plain terms – does not require anything beyond a showing of numerosity, typicality and commonality, and adequacy. To be sure, loss causation could be grounds for summary judgment once the factual record is developed through discovery. But requiring a factual showing of

---

[20]    On July 20, 2007, Sonoco's stock price plummeted 14.2% on more than five times the volume from the previous trading day. The stock price fell an additional 7.3% after the September 18, 2007 disclosure.

[21]    While Plaintiff must prove materiality at trial to be successful on its claims, as Defendants correctly note, "[a] court may not decide merits at the class certification stage." *See* Dkt. No. 68 at 15.

13

>loss causation at the class certification stage would be – to borrow a cliché – putting the cart before the horse.

257 F.R.D. at 108. Likewise, the court in *Red Hat* explicitly declined to follow *Oscar*: "Most courts outside of the Fifth Circuit have rejected [*Oscar*]. This court joins those courts and declines to add another element to the plaintiff's burden of establishing the fraud-on the-market presumption." 261 F.R.D. at 93.[22] Because proving loss causation is not required at the class certification stage and because Plaintiff has satisfied the requirements of Rule 23, the Class should be certified.[23]

### D.     The Class Period Properly Concludes on September 18, 2007

Finally, Defendants argue that the Class Period should end on July 20, 2007 instead of September 18, 2007. *See* Dkt. No. 68 at 24-27. However, contrary to Defendants' assertion, the entire truth about the price concessions given by Sonoco was not revealed on July 20, 2007. Rather, while the Company did disclose the ***existence*** of one of the price reductions on that date for the first time, Sonoco failed to inform the market of the ***financial impact*** of the price concessions until

---

[22]     Numerous courts outside the Fourth Circuit have also rejected *Oscar*. *In re Micron Techs., Inc., Sec. Litig.*, 247 F.R.D. 627, 634 (D. Idaho 2007); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112 (S.D.N.Y. 2008); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 186 (S.D.N.Y. 2008); *Schleicher v. Wendt*, 2009 WL 761157, at *12 (S.D. Ind. Mar. 20, 2009); *In re Nature's Sunshine Prods., Inc. Sec. Litig.*, 251 F.R.D. 656, 665 (D. Utah 2008); *Darquea v. Jarden Corp.*, 2008 WL 622811, at *4 (S.D.N.Y. Mar. 6, 2008). Even legal scholars reject the soundness of the decision. *See, e.g.*, Tad E. Thompson, *Recent Development: Messin' with Texas: How the Fifth Circuit's Decision in Oscar Private Equity Misinterprets the Fraud-On-the-Market Theory*, 86 N.C.L. Rev. 1086 (2008).

[23]     Defendants submit the expert report of Cathy M. Niden as part of their opposition. Dkt. No. 68-10. Dr. Niden does not opine that Plaintiff will be unable to prove loss causation in this case. Rather, Dr. Niden argues that Dr. Finnerty did not demonstrate loss causation in his declaration. Plaintiff agrees that Dr. Finnerty's declaration did not demonstrate loss causation, as Dr. Finnerty was not tasked with doing so at this stage in the proceedings. However, should the Court adopt *Oscar* and change the standards for certification in this Circuit, Plaintiff respectfully requests leave to conduct appropriate discovery and submit an expert report on loss causation to satisfy this new burden.

14

September 18, 2007. Specifically, when the Company first disclosed the price concessions on July 18, 2007, it attempted to downplay the impact the concessions were having on Sonoco's financial performance by maintaining its earnings guidance. As Defendant DeLoach told the market on July 18, 2007, in spite of the price reductions in flexible packaging:

> We expect third quarter 2007 base earnings to be in the range of $.62 to $.65 per diluted share, assuming no significant change in general economic conditions. Our expectation for full-year 2007 base earnings per diluted share is unchanged at $2.36 to $2.40 per diluted share.

*See* Dkt. No. 68-8. While the market reaction to the announcement of the previously unreported price concessions was strongly negative (Sonoco shares fell over 14% in a single day), the market did not fully appreciate the impact of the concessions until September 18, 2007 when Sonoco lowered its third quarter 2007 and annual guidance. *See* Dkt. No. 68-11.[24] The market was once again stunned by the revelation, causing statistically significant abnormal returns on Sonoco's stock price. *See* Dkt. No. 63-3 at ¶¶33-34. As a result, investors who purchased shares between July 20, 2007 and September 18, 2007 were not fully informed of the impact the price concessions were having and are properly included in the Class.

The cases cited by Defendants do not support their position. In *Simpson v. Specialty Retail Concepts*, the court found investors could not rely on the defendant's financial statements after an "unequivocal announcement that the 1986 financial statements should no longer be relied upon."

---

[24] After the close of the Class Period, on October 19, 2007, Sonoco held its third-quarter conference call with investors and, in response to an analyst's question about the Company's Flexible Packaging division, DeLoach ***admitted*** that the Company's financial performance was negatively impacted by price concessions made at the end of 2006 and early 2007:

> ***. . . we had some bids in the latter part of last year and early this year where we actually lowered some pricing and that affected the financial performance.***

*See* Transcript of October 19, 2007 conference call, a true and correct copy of which is attached hereto as **Exhibit E**, at p. 8.

15

149 F.R.D. 94, 103 (M.D.N.C. 1993). Here, the full truth about the price concessions did not occur until September 18, 2007. Thus, the July 20, 2007 disclosure of the existence of the reductions was not an "unequivocal announcement" regarding their impact on Sonoco's financials.

That shares of Sonoco slid so dramatically on September 18, 2007 makes clear that the market was not fully apprised of the negative impact the price concessions were having on the Company. *See In re LDK Solar Sec. Litig.*, 255 F.RD. 519, 528-29 (N.D. Cal. 2009) ("If some tentative or partial disclosure of fraud is published but the truth is not fully revealed, there would be no reason to assume that the market fully recovered from the impact of misrepresentation or omission. Investors who purchased after such a disclosure may well have done so at a price still inflated by the same fraud (even if less so) and may suffer losses when the full details of the fraud are exposed." As the court in *Mills* noted in rejecting the identical argument made by Defendants here:

> Moreover, at the class certification stage courts generally do not close a class period on the basis of one disclosure when a subsequent disclosure caused a significant drop in stock price. The reason is that such cases present factual issues as to whether early disclosures were fully or partially curative.

257 F.R.D. at 106. As here, "[w]here parties dispute the curative effect of a disclosure . . . and if a substantial question exists [as to the curative effect] the broader time for the class period should be certified." *Id.* at 107 (citing *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1344-45 (N.D. Ga. 2007)).[25]

---

[25] Defendants' final argument – that closing the Class Period on July 20, 2007 is appropriate because doing otherwise creates a conflict between Plaintiff and the Class as "there are potential class members whose alleged damages are more if the class period ends on July 20, 2007" – is nonsensical. *See* Dkt. No. 68 at 26-27. First, Defendants' argument is self-defeating. Having the Class Period end on July 20, 2007 (or any other date) would mean having some Class members benefit, in terms of increased damages, over others. Thus, if this conflict of interest were real – which it is not – ending the Class Period in July 2007 would not rectify the conflict, but would

16

### III.     CONCLUSION

For the reasons demonstrated in the Motion for Class Certification and herein, Plaintiff's Motion should be granted in its entirety.

DATED:  April 19, 2010               MCCUTCHEN BLANTON HOPKINS
                                            & CAMPBELL, LLP
                                     WILLIAM E. HOPKINS (S.C. Bar 6075)


                                            s/ WILLIAM E. HOPKINS
                                            WILLIAM E. HOPKINS
                                     1414 Lady Street (29201)
                                     Post Office Box 11316
                                     Columbia, South Carolina  29211-1316
                                     Telephone:  803/256-6152
                                     803/256-6155 (fax)
                                     wehopkins@mbhclaw.com

                                     Liaison Counsel for Lead Plaintiff

                                     ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     JACK REISE (*pro hac vice*)
                                     STEPHEN R. ASTLEY (*pro hac vice*)
                                     MICHAEL L. GREENWALD (*pro hac vice*)
                                     120 East Palmetto Park Road, Suite 500
                                     Boca Raton, FL  33432
                                     Telephone:  561/750-3000
                                     561/750-3364 (fax)
                                     jreise@rgrdlaw.com
                                     sastley@rgrdlaw.com
                                     mgreenwald@rgrdlaw.com

                                     Lead Counsel for Lead Plaintiff

---

simply cause a different set of investors to benefit over others.  More importantly, the close of the Class Period is not dictated by maximizing potential damages.  Rather, the Class Period appropriately concludes when the market became fully apprised about Defendants' fraud.  As explained above, that date is September 18, 2007, regardless of which investors benefit most as a result.  Also, Plaintiff is fulfilling its fiduciary obligations to the Class by seeking to have a class period certified which includes all investors damaged by Defendants' misconduct.

17

        VANOVERBEKE MICHAUD &
          TIMMONY, P.C.
        THOMAS C. MICHAUD
        79 Alfred Street
        Detroit, MI  48201
        Telephone:  313/578-1200
        313/578-1201 (fax)

        Additional Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2010, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                        s/WILLIAM E. HOPKINS
                                        WILLIAM E. HOPKINS