IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| City of Ann Arbor Employees' Retirement System, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 4:08-cv-2348-TLW-TER |
| Sonoco Products Co., Harris E. DeLoach, Jr., and Charles J. Hupfer, | ) ) ) | |
| Defendants. | ) ) ) | |

# ORDER

The City of Ann Arbor Employees' Retirement System, ("plaintiff"), originally filed this action on June 26, 2008. (Doc. #1). The plaintiff filed an amended class action complaint on October 14, 2008. (Doc. #27).

This matter is now before the Court for resolution of the plaintiff's Motion for Class Certification. (Doc. # 63). The defendants filed a response in opposition to the motion for class certification. (Doc. # 68). The plaintiff then filed a reply to the defendants' response. (Doc. # 71). This Court held a hearing on the matter on May 17, 2010. The Court has considered the motions, memoranda, and arguments of the parties, and this matter is now ripe for disposition.

**FACTS AND PROCEDURAL HISTORY**

Sonoco is a global supplier of industrial and consumer packaging and packaging services, headquartered in Hartsville, South Carolina. With over 16,500 employees and sales of approximately $3.6 billion in 2009, it is also among the largest companies in its industry. The plaintiff asserts that while Sonoco had met or exceeded earnings estimates for fourteen periods, in late 2006, it had to

provide certain customers price concessions. Additionally, the plaintiff asserts that the company lost certain accounts around the same time. The plaintiff argues that even though the defendants knew that these issues would adversely impact financial results, the defendants failed to report this information. Moreover, the plaintiff purports that this failure to disclose artificially inflated the company's stock price, and the CEO sold 155,000 shares of stock during this time period.

The defendants filed a motion to dismiss on November 5, 2008. (Doc. # 30). A hearing was held on the matter, and this Court denied the motion on August 14, 2009. (Doc. # 52). A motion to reconsider was then filed by the defendants on August 26, 2009. (Doc. # 54). After careful review, this Court denied the motion for reconsideration. (Doc. # 54).

## ANALYSIS

To certify a class, all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied, and one of the three categories listed in Rule 23(b) must be satisfied. The requirements of Rule 23(a) are, "numerosity, typicality, commonality, and adequacy of representation, with 'the final three requirements . . . tend[ing] to merge.'" Gariety v. Grant Thornton, 368 F.3d 356, 362 (4th Cir. 2004) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998)). The plaintiff seeks certification under Rule 23(b)(3), which states that a class may be certified if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

It is noted that "the plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied." Id. (citing Lienhart v. Dryvit Sys., Inc.,

255 F.3d 138, 146 (4th Cir. 2001). Additionally, "A district court has broad discretion in deciding whether to certify a class." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006) (quoting Lienhart v. Dryvit Sys., Inc., 255 F.3d at 146). However, when determining whether the requirements of Rule 23 have been met, this Court must not merely rely on the allegations found in the plaintiff's complaint, but must "tak[e] a close look at relevant matters," conduct "a rigorous analysis of such matters," and make "findings that the requirements of Rule 23 have been satisfied." Gariety, 368 F.3d at 365 (citations omitted). While a Rule 23 certification analysis should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits," the Fourth Circuit, quoting the United States Supreme Court, has made clear that "sometimes it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question." Id. (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). Therefore, "[T]he factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits." Id. at 366.

### Rule 23(a)

**i. Numerosity**

Rule 23(a)(1) states that the class must be "so numerous that joinder of all members is impracticable." The plaintiff has presented evidence demonstrating that Sonoco had approximately 100,003,445 outstanding shares of common stock as of April 27, 2007, and approximately 100,919,886 outstanding shares of common stock as of July 27, 2007. (Doc. # 63-1 and 63-2, Sonoco Form 10-Q filed May 1, 2007 and Sonoco Form 10-Q filed July 31, 2007). Sonoco's stock is traded on the New York Stock Exchange ("NYSE"). Additionally, the plaintiff's expert notes that there were approximately 307 institutional holders of Sonoco common stock during the proposed Class

Period. Given the number and likely geographical dispersion of potential class members, joinder would be impracticable. Therefore, the plaintiff has shown that the numerosity requirement has been met. See e.g. In re Bearingpoint, Inc. Sec. Lit., 232 F.R.D. 534, 538 (E.D. Va. 2006) (holding that numerosity had been met where there were more than 194 million shares of common stock outstanding, and "while the precise number of shareholders is unknown, it is reasonable to infer from this fact that there are hundreds, if not thousands, of potential class members disbursed throughout the country.").

### ii. Commonality

This Court next turns to the question of commonality. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Fourth Circuit has stated that a "common question is one that can be resolved for each class member in a single hearing" and that a "question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." Thorn, 445 F.3d at 319.

Here, the plaintiff asserts the proposed class shares common questions, including whether the federal securities laws were violated by the defendants' alleged acts and omissions; whether the defendants made statements to the investing public that were misrepresentations or omissions of material facts; whether the defendants acted wilfully, with knowledge, or recklessly with regards to their alleged misrepresentation; and whether and to what extent members of the proposed class have sustained damages. This Court holds that these questions are sufficient to show that this action has common questions of law or fact related to the proposed class. As stated, the plaintiff alleges that the same misrepresentations or omissions were made to all members of the proposed class through

press releases, conference calls, and filings with the SEC. Therefore, this Court concludes that the commonality requirement has been satisfied.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality requires that the claims of the named class representative be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Lienhart v. Dryvit Sys. Inc., 255 F.3d at 146 (citing Gen. Tel. Go. of Southwest v. Falcon, 457 U.S. at 156). Additionally, "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir.1997)).

The plaintiff asserts that its claims are identical to those of the class. It argues that its claims arise out of the same alleged course of conduct undertaken by the defendants which the plaintiff asserts gives rise to its cause of action. This Court finds the plaintiff's position persuasive. The information that the plaintiff asserts is materially false and misleading is the same information that would be used by other class members to prove their case. Additionally, recovery will be sought for a purported violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 by the plaintiff and the proposed class. Therefore, the typicality requirement has been satisfied.

### iv. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." It is noted that "the principal factor in determining the adequacy

of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously." South Carolina Nat'l Bank. v. Stone, 139 F.R.D. 325, 329 (D.S.C. 1991). Furthermore, "This inquiry involves two issues: (i) 'whether plaintiffs have any interest antagonistic to the rest of the class;' and (ii) whether plaintiffs' counsel are 'qualified, experienced and generally able to conduct the proposed litigation.'" Id. (quoting Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987). In addition, the plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." Broussard, 155 F.3d at 338.

    First, the defendants argue that the plaintiff has failed to demonstrate that it has sufficient knowledge and control of the litigation. The defendants cite to Shiring v. Tier Techs. Inc. for the proposition that "in the securities fraud context the adequacy inquiry must be particularly searching" because "the PSLRA was 'intended to empower investors so that they, not their lawyers, control securities litigation . . . [and to change the existing system, in which] investors in the class usually have great difficulty exercising any meaningful discretion over the case brought on their behalf.'" Shiring v. Tier Techs. Inc., 244 F.R.D. 307, 315 (E.D. Va. 2007) (quoting S. Rep. No. 104-98 at 6 (1995)). This case further held that the plaintiff must demonstrate it "understands the action in which [it] is involved." Id. at 316. Furthermore the plaintiff's understanding must not be from "knowledge acquired solely from counsel." Id. (citations omitted).

    This Court holds that the plaintiff has exhibited sufficient knowledge and understanding of the facts and nature of the lawsuit to serve as class representative. The plaintiff's counsel notes that the plaintiff has produced numerous pages of documents to the defendants that detail the plaintiff's trades in Sonoco securities, it has answered interrogatories, and the plaintiff's corporate representative has demonstrated detailed knowledge of the case in his deposition. Counsel for the

plaintiff notes that the corporate representative correctly identified the individual defendants and their job titles in his deposition, knew where the case was pending, provided an accurate description of Sonoco's business, described the allegations found in the Amended Complaint, explained why the plaintiff believes Sonoco committed securities fraud, knew the amount of damage suffered by the plaintiff, explained the procedural history of the case, and noted the plaintiffs's understanding and commitment to acting as class representative. (Doc. # 71-1, Tr. of Willie J. Powell).

The defendants argue that the plaintiff's deferral to counsel in matters relating to litigation is evidence of the plaintiff's lack of knowledge and control. Additionally, the defendants assert that the plaintiff holds a limited, figurehead role instead of actually being involved in the details of the litigation. This Court concludes otherwise. The testimony of the plaintiff's representative at deposition reveals that the plaintiff is knowledgeable of the litigation and controls the course of the litigation. It is permissible for a representative party in a class action to defer to legal counsel on certain details of litigation. Furthermore, the requirements noted in Shiring that the plaintiff exercise control and exhibit meaningful discretion over the case have been satisfied.

The defendants point to the indemnity agreement between the plaintiff and counsel to support their argument that the plaintiff is not in control of the litigation. This Court does not conclude an indemnity agreement is acknowledgment of the plaintiff's limited role in the litigation. The defendants also point out the corporate representative's lack of knowledge concerning other cases for which the plaintiff has served as lead counsel as an indication that the plaintiff does not have an independent grasp of the facts beyond what has been provided by counsel. This Court finds this argument unpersuasive. The inability of a representative of the plaintiff to recount facts at a deposition about other class actions for which the plaintiff has been appointed lead counsel is not

the controlling factor regarding the plaintiff's ability to serve as lead plaintiff in this current litigation. Moreover, this Court finds the defendants' assertion that the plaintiff has pursued this litigation based only on its counsel's investigation and research is insufficient to preclude the plaintiff from serving as lead counsel.

This Court also finds that the defendants' assertion that the plaintiff did not participate in the drafting of the complaint is not determinative. Even if the plaintiff did not draft its own complaint, the testimony of the corporate representative indicates that the Board of Trustees for the plaintiff voted to bring this action after reviewing a draft complaint and conferring with counsel. The Court holds that this, in conjunction with other facts in evidence presented by the plaintiff, to be sufficient to establish that the plaintiff has the requisite level of knowledge and control of the litigation to serve as lead plaintiff.

The next issue is the defendants' assertion that the plaintiff lacks the credibility required to serve as class representative. The Court finds this argument unpersuasive. The defendants argue that the plaintiff filed a false certification with the Court. They assert that the plaintiff, City of Ann Arbor Employees' Retirement System, filed the transactions of Sonoco stock for the City of Ann Arbor Retiree Health Care Benefits Plan and Trust, and not its own transactions. Counsel for the plaintiff argues that this was a technical inaccuracy that resulted from accidentally including the transactions made by an interrelated health care fund that provides health benefits to the same individuals to whom the plaintiff provides retirement benefits. The plaintiff notes that these two systems share the same offices, beneficiaries, trustees staff, as well as the same administrator. This Court concludes that any misfiling was likely due to a mistake and not an intent to mislead by the plaintiff. Therefore, this Court finds the defendants' argument against the plaintiff's credibility unpersuasive.

The defendants also assert that the fee arrangement between the plaintiff's primary counsel and the plaintiff's counsel representing it in this matter creates a conflict of interest that renders the plaintiff an inadequate class representative. The defendants argue that plaintiff's primary counsel will be compensated out of any recovery that lead counsel obtains for the class. The defendants argue that payments to the plaintiff's general counsel are payments to the plaintiff, which is prohibited by the Reform Act. The plaintiff argues that any fee collected by outside counsel would not financially benefit the plaintiff. The plaintiff asserts that it retained both firms to represent it and the proposed class in this matter. Both firms agreed to represent the plaintiff on a contingency fee basis, which is not inherently unethical or inappropriate. This Court finds the plaintiff's position persuasive. Additionally, the defendants cite no persuasive caselaw where a similar fee arrangement was deemed inappropriate. Therefore, this Court finds that no conflict of interest exists that would preclude the plaintiff from serving as representative counsel.

Finally, this Court holds that counsel for the plaintiff has satisfied the requirement that it be qualified, experienced, and generally able to conduct the proposed litigation. It has also met the requirements of Rule 23(g), which requires the court to consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." This Court holds that the plaintiff's counsel has satisfied these requirements. Accordingly, the plaintiff has satisfied the "adequacy of representation" requirement of Rule 23(a).

## Rule 23(b)

**Predominance Requirement of Rule 23(b)(3)**

As noted, in order to maintain a class action 23(b)(3) requires this Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance requirement is "similar but 'more stringent' than the commonality requirement of Rule 23(a)." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d at 319 (citing Lienhart, 255 F.3d at 146 n.4). Further, this Court notes,"The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." In re Red Hat, Inc. Sec. Lit., 261 F.R.D. 83, 89-90 (E.D.N.C. 2009).

In order to prevail under Section 10(b) and Rule 10b-5, a plaintiff must prove that "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages.'" Ottman v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 342 (4th Cir. 2003) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 613 (4th Cir.1999). The defendants specifically challenge the ability to use class-wide proof to satisfy reliance and injury. More recently, the Fourth Circuit Court of Appeals held:

> The Supreme Court has clarified that a plaintiff suing in a typical private action under § 10(b) must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation" (that is, the economic loss must be proximately caused by the misrepresentation or omission).
>
> In re Mut. Funds Inv. Lit., 566 F.3d 111, 119 (4th Cir. 2009) (citing Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008).

It is noted that "reliance . . . is typically proven on an individual basis." In re Red Hat, Inc. Sec. Lit., 261 F.R.D. at 90 (quoting In re Boston Scientific Corp. Sec. Lit., 604 F.Supp. 2d 275, 283 (D.Mass. 2009). However, reliance can "be treated as a common issue if it is *presumed* under a theory that the defendants defrauded the market - not the individual plaintiffs - so long as the plaintiffs purchased their stock in an efficient market." Id. (quoting Gariety, 368 F.3d at 363). However, "To gain the benefit of the presumption, a plaintiff must prove '(1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market'; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed." Gariety, 368 F.3d at 364 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 248 n.27 (1988)).

The defendants assert that the plaintiff has failed to make a showing that the defendants' alleged misrepresentations were material. The defendants assert that the plaintiff rests only upon its allegations made in the Amended Complaint to show materiality, and that mere allegations are insufficient to satisfy the requirement that the plaintiff prove the elements of the fraud on the market theory. Therefore, according to the defendants, since the plaintiff cannot satisfy all the elements of the fraud on the market theory, it does not gain the benefit of the presumption of reliance. Without the presumption of reliance, the defendants assert that the plaintiff cannot satisfy the requirement that common questions of law or fact predominate over questions affecting individual members, and class certification would therefore be inappropriate.

In order for a statement or omission to be considered material, there must be "a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information

11

made available to be significantly altered by disclosure of the fact." <u>Ottmann v. Hanger Orthopedic Group, Inc.</u>, 353 F.3d 338, 343 (4th cir. 2003) (quoting <u>Longman v. Food Lion, Inc.</u>, 197 F.3d 675, 682 (4th Cir. 1999)). Courts have noted that the "determination of materiality is a mixed question of law and fact that generally should be presented to a jury," and that "[o]nly if no reasonable juror could determine that the [alleged statements] would have 'assumed actual significance in the deliberations of the reasonable [investor]' should materiality be determined as a matter of law." <u>In re Datastream Systems, Inc. Sec. Litig.</u>, 2000 WL 33176025 at *2 (D.S.C. 2000) (unpublished) (quoting <u>Press v. Chemical Inv. Servs. Corp.</u>, 166 F.3d 529, 538 (2d Cir. 1999)).

The arguments put forth by the defendants concerning materiality are similar to those asserted by the defendants in their motion to dismiss. For similar reasons, this Court finds the defendants' argument unpersuasive. The Court's order dated August 14, 2009 reads, "The record reflects that on July 20, 2007, representatives of the defendant company disclosed that the company had given prior price concessions to a major customer. On the date of the disclosure of these concessions, shares in the defendant corporation declined in price." (Doc. # 52). Additionally, the record reflects at least one analyst inquired about the price concessions. At the Sonoco Products Company Second Quarter 2007 Earnings Conference Call an analyst for Wachovia asked, "In your press release you talked about some price reductions in certain flexible packaging and I'm not sure if you mentioned that on the call, but could you give us more color on that please." (Doc. # 68-9, Tr. of Sonoco's July 20, 2007, conf. Call at 5). In response, the CEO stated that "last year, I guess in probably the third or fourth quarter on a contract with one of our major customers there were price reductions given. They were baked into our guidance." <u>Id.</u> Similarly, an equity research report published by Wachovia Capital Markets, LLC on July 20, 2007 noted that Sonoco for the second quarter of 2007 reported

that their diluted earnings per share were $0.56, or $0.03 below consensus. (Doc. # 71-2, Analyst Report). Further, the publication stated, "Most of the shortfall seems to be due to operational issues in its flexible packaging business (small but growing), in addition to some undercutting on price (negative for BMS/SEE) in flexible packaging (very unlike Sonoco)." Id. The fact that an analyst attributed the shortfall in earnings per share partially to undercutting on price in flexible packaging, sufficiently establishes at this stage that a reasonable purchaser or seller of a security would consider the fact important in deciding whether to buy or sell the security. Additionally, the fact that the analyst notes this practice was "very unlike Sonoco" supports a finding that a reasonable purchaser or seller would have viewed the total mix of information made available to be significantly altered by the disclosure of this fact. Moreover, the negative market reaction to the July 20, 2007 press conference also supports a finding at this stage of the proceedings that the price concessions were material. The record reflects that Sonoco's stock price fell by approximately 14.2% on abnormally high trading volume from the previous trading day. Additionally, the plaintiff has introduced testimony that the stock price decline on July 20, 2007 was statistically significant. (Doc. # 63-3, Decl. of John D. Finnerty, Ph.D in Supp. of Lead Pl's Mot. for Class Cert.) In light of the foregoing, this Court concludes that the materiality requirement of the fraud-on-the-market theory has been satisfied.

The Court will also assess the plaintiff's ability to satisfy the other requirements to utilize the fraud-on-the-market theory at this stage. First, at this stage of the litigation, the plaintiff has presented evidence that the defendants failed to reveal certain price concessions to the market, which is sufficient to satisfy the requirement that the defendants must have made public misrepresentations. Second, the plaintiff has established that it purchased stock in Sonoco after the alleged

misrepresentations but before the truth was revealed. Finally, the plaintiff has established that Sonoco's shares were traded on an efficient market. Although this last element is often contested, the facts related to this issue are not substantially in dispute. First, Sonoco is traded on the New York Stock Exchange (NYSE) and was at all times during the class period. The record also reflects that a total of 86,015,229 shares were traded during the Class Period, and the average number of shares outstanding was 100,035,303. (Doc. # 63-3, Decl. of John D. Finnerty, Ph.D). The plaintiff has presented evidence that Sonoco's weekly trading volume over the Class Period was 2.61% of total shares outstanding, at least six separate analysts followed Sonoco stock in 2007, sufficient market makers and arbitrageurs existed during the class period to ensure that the market reacted swiftly to company news and reported financial results, there is a high level of institutional ownership and active trading by these holders, there was a narrow bid-ask spread during the class period, and the put-call parity relationship during the class period "suggests that Sonoco's stock price fairly reflected its intrinsic value, as would be expected in an efficient market." (Doc. # 63-3, Decl. of John D. Finnerty, Ph.D). See Gariety, 368 F.3d at 368. See also Cammer v. Bloom, 711 F. Supp. 1264 (D.N.J. 1989). These facts, among others presented by the plaintiff, establish that Sonoco indeed traded on an efficient market. Therefore, the plaintiff has satisfied the requirements necessary to utilize the fraud-on-the-market theory to meet the element of "reliance" for purposes of class certification.

Finally, the defendants challenge the plaintiff's ability to show economic loss. Economic loss, or "loss causation," is satisfied when the plaintiff shows:

> "that the defendant's conduct was a substantial cause of its injury." That is, "as long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement."

14

> The facts alleged in the complaint therefore need not conclusively show that the securities' decline in value is attributable solely to the alleged fraud rather than to other intervening factors.

In re Red Hat, Inc. Sec. Lit., 261 F.R.D. at 93 (quoting In re Mut. Funds Inv. Lit., 556 F.3d 111, 128 (4th Cir. 2009).

Notably, the defendants argue the plaintiff "must 'establish[] economic loss on a class-wide basis.'" (Doc. # 68, Defs' Opp. to Lead Pl.'s Mot. for Class Cert. at 18) (quoting Pearce v. Painewebber, Inc., 2004 WL 5282962 at *10 (D.S.C. 2004). "[T]o satisfy Rule 23, [the plaintiff] must demonstrate that injury can either be established on a class-wide basis, or that the class is entitled to a presumption of injury under some theory." Pearce at *11.

However, after noting that the Fourth Circuit Court of Appeals acknowledges economic loss must be established on a class-wide basis, the defendants blend this analysis with a line of cases from the Fifth Circuit which require inquiry into the ability to prove loss causation in order to utilize the fraud-on-the-market theory. See Fener v. Operating Eng'rs Const. Indus. & Misc. Pension Fund, 579 F.3d 401, 407 (5th Cir. 2009) ("When proving reliance, plaintiffs cannot trigger the presumption . . . by simply offering evidence of any decrease in price following the release of negative information . . . . [They instead] must show that the false statement causing the increase was related to the statement causing the decrease. This last requirement for fraud-on-the-market reliance is known as loss causation . . . ." (citations omitted)) See also Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261 (5th Cir. 2007). The distinction is crucial; under the first analysis, the plaintiff must show that class-wide proof will be used to satisfy loss causation while the second requires inquiry into the plaintiff's ability to actually establish loss causation.

15

There is no caselaw from the Fourth Circuit mandating a similar requirement. Moreover, other district courts from this Circuit have declined to require proof of loss causation at class certification. See In re Red Hat, 261 F.R.D. at 93; In re Mills Corp. Sec. Lit., 257 F.R.D. 101, 107-09 (E.D. Va. 2009); In re BearingPoint, Inc. Sec. Lit, 232 F.R.D. 534, 543 (E.D. Va. 2006). This Court joins in its determination that proof of loss causation is not required at class certification.[1]

This does not negate the plaintiff's responsibility of showing that class-wide proof can be used to satisfy the element of loss causation. However, this Court holds that the same proof and issues that may arise concerning the evidence used to prove loss causation will be common to the members of the proposed class. The issues pointed out by the defendants, namely the problems concerning the plaintiff's ability to show that the damages suffered by the plaintiff were the result of the alleged misrepresentations and not from the release of unrelated negative information, will be common to all members of the proposed class. Therefore, for the aforementioned reasons, the plaintiff has established that questions of law or fact common to class members predominate over any questions affecting only individual members.

**Superiority Requirement of Rule 23(b)(3)**

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." The plaintiff argues that because "damages of individual class members might be too small to provide incentive for the individual to sue" a class action is superior. In re Mills, 257 F.R.D. at 109. The plaintiff notes that the costs associated with

---

[1] This Court's decision appears to be in line with the majority of other circuits with regard to this issue. See e.g., Schleicher v. Wendt, — F.3d —, 2010 WL 3271964 (7th Cir., Aug. 20, 2010) ("Oscar Private Equity represents a go-it-alone strategy by the fifth circuit. It is not compatible with this circuit's decisional law . . . and we disapprove its holding. It has not been adopted by any other circuit, and it has been rejected implicitly by some.")

bringing individual actions would be prohibitive when weighed against the potential individual recoveries. See South Carolina Nat'l. Bank. v. Stone, 139 F.R.D. at 335. Additionally, the plaintiff argues that the courts would be significantly burdened from adjudicating this case as separate actions instead of as a class. This Court finds the plaintiff's arguments persuasive. Therefore, this Court determines that the superiority requirement of Rule 23(b)(3) has been satisfied.

**The End Date of the Class Period**

The defendants argue that the class period should end on July 20, 2007 because it was on this date that Sonoco disclosed the existence of price concessions. They assert that the gravamen of the plaintiff's Amended Complaint is that the defendants failed to disclose price concessions in the Flexible Packaging Division. Therefore, according to the defendants, the date on which the existence of these price concessions was disclosed is the proper date on which to end the class period.

The plaintiff, however, asserts that the "entire truth" about the price concessions was not revealed on July 20, 2007. The plaintiff argues that while the existence of price concessions came to light on July 20, 2007, the market was not fully informed of the financial impact of the price concessions until September 18, 2007. According to the plaintiff, Sonoco attempted to downplay the impact of the concessions by maintaining its earnings guidance on July 20, 2007.

At Sonoco's press release on July 20, 2007, the company noted that "base operating profit declined due to the lower volumes, price reductions in certain flexible packaging without offsetting reductions in costs, an unfavorable change in the mix of business, along with rising labor and other costs." (Doc. # 68-8, July 20, 2007 Press Release). Additionally, at Sonoco's conference call in response to a question concerning price reductions, the CEO stated that "last year, I guess in probably the third or fourth quarter on a contract with one of our major customers there were price

reductions given." (Doc. # 68-9, Tr. of Sonoco's July 20, 2007, conf. call at 5). However, even after considering the negative information disclosed on this date, including the price concessions, the company determined that it would maintain its previously established full-year 2007 base EPS of $2.36 to $2.40. Sonoco did, however, note that "[t]he Company's guidance for the remainder of the year assumes reduced profitability in the Consumer Packaging segment, principally in flexible packaging operations . . . ." Id. (Doc. # 68-8, July 20, 2007 Press Release).

The plaintiff contends that while Sonoco's stock price dropped after the disclosures made on July 20, 2007, the market did not fully appreciate the impact of the concessions until September 18, 2007 when Sonoco lowered its base earnings guidance for the third quarter of 2007 and for the full year of 2007. On this latter date, the company reduced its third quarter of 2007 estimate and its base earnings estimate for the year of 2007. (Doc. # 68-11, September 18, 2007 Press Release). The CEO attributed the weaker performance estimate to a "greater than expected decline in volumes across most of our served markets as a result of weaker market conditions," and higher than expected raw material costs. Id. There is no mention of the price concessions or their financial impact in the September press release.

Courts from this circuit that have analyzed the issue of when to close the class period have held that "in a securities class action based on material misrepresentations and omissions to the investing public the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market." In re Kirschner Med. Corp. Sec. Lit., 139 F.R.D. 74, 82 (D. Md 1991) (citing cases). See also Simpson v. Specialty Retail Concepts 149 F.R.D. 94, 103 (M.D.N.C. 1993). "[The] test is a preliminary merits determination whether the facts which underlie the gravamen of plaintiff's complaint continue to represent a reasonable basis on which the

18

individual purchaser on the market would rely." Simpson 149 F.R.D. at 94 (quoting In re Data Access sys. Sec. Lit., 103 F.R.D. 130, 143 (D.N.J. 1984)). "Where the parties dispute the curative effect of a release, such as here, the court should determine whether there is a 'substantial question of fact as to whether the release had cured the market or was itself misleading.'" Id. (quoting Kirschner, 139 F.R.D. at 82). Additionally, "[A]t the class certification stage courts generally do not close a class period on the basis of one disclosure when a subsequent disclosure caused a significant drop in stock price. The reason is that such cases present factual issues as to whether early disclosures were fully are partially curative." In re Mills, 257 F.R.D. at 106.

At this stage, the evidence of record leads this Court to conclude that there exists a question of fact as to whether the July 20, 2007 announcement effectively cured any previous alleged misrepresentations. Following the September 18, 2007 press release, Sonoco's stock price fell approximately 7.3%. The plaintiff's expert deemed this to be statistically significant. (Doc. # 63-3 at ¶ 34). When a company releases negative financial information concerning its stock it should come as no surprise that the stock price may fall. Also, as previously noted, the September 18, 2007 press release said nothing specifically about price concessions. However, the plaintiff's position that the market did not fully appreciate the import of the concessions until September 18, 2007 is sufficient to use that date at this stage. Additionally, this Court notes that the evidentiary difference between those who purchased before and after July 20, 2007 does not overwhelm the common issues between the class. Said differently, common questions of law or fact still predominate even where

the class period ends on September 18, 2007. Therefore, the Court determines that, at this stage, certifying the broader class period is appropriate.[2]

## CONCLUSION

For the foregoing reasons, the Court grants the plaintiff's motion for certification of this action as a class action. City of Ann Arbor Employees' Retirement System is appointed as class representative and lead counsel is appointed as class counsel. The class consists of all purchasers of common stock of Sonoco Products Co. between February 7, 2007 and September 18, 2007, inclusive and who were damaged thereby.

**IT IS SO ORDERED**.

    s/Terry L. Wooten
TERRY L. WOOTEN
United States District Judge

September 30, 2010
Florence, South Carolina

---

[2] This Court's determination does not preclude it from revisiting this issue in the future. See In re LTV Sec. Lit., 88 F.R.D. 134, 147 (N.D. Tex. 1980) (noting that while the court had reservations as to whether the plaintiffs could make out a claim with regard to part of the class period, the plaintiffs established that a sufficiently substantial question had been presented and that "[s]hould later discovery reveal this to be in error, the court can redefine the class period.")