UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | | |
|---|---|---|
| CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | No. 4:08-cv-02348-TLW-SVH |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | |
| SONOCO PRODUCTS CO., HARRIS E. DELOACH JR., and CHARLES J. HUPFER, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**LEAD PLAINTIFF AND CLASS REPRESENTATIVE CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM'S REPLY MEMORANDUM IN SUPPORT OF <u>ITS MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF JOHN P. FREEMAN</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................1

II.  REPLY ARGUMENT .....................................................................................................3

    A.   Defendants Do Not Defend Freeman's Opinions on Scienter, Loss Causation, Materiality, the Safe Harbor Provision, Statutory Interpretation, and Whether Plaintiff Has Met Its Burden of Proof ................................................................................................3

    B.   Freeman's Disclosure Opinions, Including that Sonoco Complied With Federal and State Securities Rules and Regulations, are Not Admissible ........................................4

    C.   Freeman's Opinion that Disclosing Confidential Pricing Information Would be Anti-Competitive is Not Admissible ..................................................................................10

    D.   Freeman's Methodology is Fatally Flawed and Incomplete ..................................12

    E.   Freeman's Reliance on Noe is Impermissible .......................................................14

III. CONCLUSION..............................................................................................................15

Lead Plaintiff and Class Representative City of Ann Arbor Employees' Retirement System ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Evid. 702 ("Rule 702"), respectfully submits this reply memorandum in support of its motion to exclude the opinions and testimony of Defendants'[1] expert John P. Freeman ("Motion").[2]  Dkt. No. 109.

## I.   INTRODUCTION

While styling their response to Plaintiff's Motion as an "opposition," Dkt. No. 121,[3] Defendants jettison the vast majority of Freeman's opinions, conceding what is black-letter law: that the legal beliefs he offers are inadmissible.  To be sure, Defendants offer no rebuttal to Plaintiff's Motion as it pertains to Freeman's inadmissible opinions on scienter, loss causation, materiality, statutory interpretation, the applicability of the safe harbor provision, and whether Plaintiff has met its burden of proof.  Motion at 2-3, 6-17.  Because Plaintiff's Motion stands unopposed on these topics, Freeman's related opinions must be excluded.

Instead, Defendants only try to salvage Freeman's proposed testimony on "SEC rules and regulations" and "the propriety of Sonoco's disclosures."  Def. Mem. at 1, 3.  To that end, Defendants argue that Freeman can properly opine that "Sonoco's management fully discharged the disclosure obligations under the federal and state securities rules and regulations[,]" and that "[t]he applicable SEC rules and regulations, including Item 303 and Item 601 of Regulation S-K, did not

---

[1]   "Defendants" refers to, collectively, Sonoco Products Company ("Sonoco" or the "Company"), Harris E. DeLoach, Jr. ("DeLoach"), and Charles J. Hupfer ("Hupfer").

[2]   On February 14, 2011, Plaintiff filed under seal unredacted and complete copies of Freeman's report ("Freeman Report"), reply ("Freeman Reply"), and deposition transcript ("Freeman Dep.").  Plaintiff also filed under seal complete copies of the other expert submissions and deposition transcripts in this case.  The Court granted the motion to seal on February 23, 2011. Dkt. No. 115.

[3]   Defendants' response in opposition to Plaintiff's Motion is referred to herein as "Def. Mem."

1

and do not require disclosure of specific customer pricing or contract information in SEC-filed reports or otherwise." *Id*. at 3. But, as explained in the Motion and herein, these opinions simply state legal standards and apply selected facts to those standards to draw legal conclusions. As one court aptly noted in rejecting similar proffered testimony:

> When discussing expert opinion, Judge Learned Hand once warned trial courts: "Argument is argument whether in the [witness] box or at the bar, and its proper place is the last." *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930). The same can be said here because the declarations of Professor [Freeman] only advocate a particular interpretation of a statute and the ultimate outcome of the motion.
>
> In our adversarial system, lawyers make arguments, judges write legal opinions-and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court. Professor [Freeman is] free to consult with the moving defendants, sign their brief, or both. [He] may attend the conferences and argue on their behalf. [He] could have submitted an amicus brief arguing how the law *should* be interpreted, although the time for such a submission has passed. But it remains this Court's exclusive duty and province "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

*In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 69-70 (S.D.N.Y. 2001).

Thus, Defendants miss the mark when they argue that "[m]erely being a lawyer does not disqualify one as an expert witness[,]" Def. Mem. at 8, n.6, as Plaintiff does not dispute that a lawyer, in certain cases, can serve as an expert witness. Nor does Plaintiff dispute that Freeman is an able law professor.[4] Rather, Freeman's proffered testimony in this case is inadmissible for the same reason every court to address this issue has so held – because no expert witness can be a substitute

---

[4] While Defendants devote a considerable portion of their response to Freeman's qualifications, *see* Def. Mem. at 2-3, 5-6, Plaintiff has never questioned Freeman's standing as an accomplished law professor. However, that does not render his opinions on the governing law, or conclusions to be drawn by applying facts to that law, appropriate or admissible.

2

for the judge and jury.[5]  Couched as "expert opinion," Freeman's legal submissions try to do just that.  Because Freeman's opinions are plainly inadmissible, they should be excluded in their entirety.

## II.  REPLY ARGUMENT

### A.  Defendants Do Not Defend Freeman's Opinions on Scienter, Loss Causation, Materiality, the Safe Harbor Provision, Statutory Interpretation, and Whether Plaintiff Has Met Its Burden of Proof

Defendants do not defend the majority of Freeman's proffered opinions, including those on scienter, loss causation, materiality, statutory interpretation, the applicability of the safe harbor provision, and whether Plaintiff has proven its claims, never addressing Plaintiff's arguments regarding the exclusion of these opinions in their opposition.  Because Defendants have thus conceded that Freeman's opinions on these topics are inappropriate, they must be excluded.[6]  *See Kinetic Concepts, Inc. v. Convatec, Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (recognizing "the general principle that a party who fails to address an issue has conceded the issue" and collecting cases); *Topliff v. Wal-Mart Stores E. LP*, No. 6:04-CV-0297 (GHL), 2007 WL 911891, at *7 (N.D.N.Y. Mar. 22, 2007) ("Failure to oppose one of the legal

---

[5]  Defendants also miss the mark when they dismissively state that Freeman's failure to cite any cases that have permitted the expert opinions he offers "cannot be regarded seriously." Def. Mem. at 5.  While "[i]t is not for an expert to 'rule' on the admissibility of his own testimony," *id*., Freeman is offered as an expert in securities litigation who "has published numerous articles on topics related to securities laws in various peer-reviewed journals and has offered testimony in over fifty cases in the past four years." *Id*. at 6.  Thus, Freeman's inability to name a single case where his opinions in this case have been accepted underscores the inappropriateness of his proposed expert testimony.

[6]  In their motion to exclude the opinions and testimony of Plaintiff's expert John D. Finnerty, Ph.D., Dkt. No. 105, Defendants only take issue with a limited subset of Dr. Finnerty's opinions, yet argue that ***all*** of Dr. Finnerty's opinions should be excluded (including, among others, unchallenged opinions on market efficiency and the statistical significance of Sonoco's stock returns on July 20, 2007 and September 18, 2007).  Defendants do not apply that all-or-nothing standard to themselves.

3

arguments advanced by a movant on a motion to exclude expert testimony shall be deemed 'consent' to exclusion based on that legal argument.").

### B. Freeman's Disclosure Opinions, Including that Sonoco Complied With Federal and State Securities Rules and Regulations, are Not Admissible

While conceding that the majority of his opinions are inadmissible, Defendants maintain that Freeman's opinions regarding Sonoco's compliance with the disclosure obligations under certain SEC regulations are admissible. Def. Mem. at 3, 7-11. With no support, Defendants claim Freeman can opine that "Sonoco's management fully discharged the disclosure obligations under the federal and state securities rules and regulations." *Id*. at 3. However, Defendants' argument is foreclosed by the very case law upon which they rely.

To be clear, Freeman's opinions do not "assist the trier of fact in understanding complicated issues related to the securities regulations and practices within the securities industry." *Id*. at 7. Rather, Freeman's reports are comprised entirely of legal arguments wherein he provides an overview of what he deems to be the pertinent statutory framework and regulations, applies certain facts hand-selected by defense counsel to those regulations, and then draws legal conclusions regarding whether Defendants violated the securities laws. *See, e.g.,* Freeman Report at ¶10 ("In other words, my review of the instant facts leaves me convinced the Defendants did not violate Rule 10b-5's disclosure requirements."), ¶10(3) ("… I find that this disclosure was not materially misleading"), ¶10(4) ("The applicable SEC rules and regulations, including Item 303 and Item 601 of Regulation S-K, did not and do not require disclosure of the subject information in SEC-filed reports or otherwise."). To reach these legal opinions, Freeman tracks the language of the governing statutes, *see, e.g., id*. at ¶12 (quoting Rule 10b5-1), and offers his view on the applicable case law. *See, e.g.*, *id*. at ¶¶14, 53-55 (quoting a case from the Southern District of New York and stating, "In my opinion, the language quoted above correctly interprets how Item 303 is to be construed and

4

provides excellent guidance in this case."), ¶57. Indeed, the central opinion espoused by Freeman is that "Sonoco and its senior management complied with its disclosure requirements under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and accordingly, did not violate Rule 10b-5 as alleged by plaintiff." *Id.* at ¶4.[7]

As set forth in Plaintiff's Motion, these opinions are inadmissible. Motion at 5-9, 12-13. Despite this clear law, which Defendants largely ignore, Defendants argue Freeman's opinions are appropriate because they "would assist the trier of fact in grappling with the complex securities regulations" at issue in this case. Def. Mem. at 7. But Freeman does not explain "complex securities regulations," nor does he analyze what he considers to be "reasonable" disclosure practices by a public company. He provides no overview of the reporting requirements of publicly traded companies or any other "background" information that could assist the trier of fact. Instead, Freeman simply sets forth statutes and regulations, applies selected facts to those rules, and explains why he believes Defendants did not violate them. Such testimony usurps the role of the Court and the jury and, as the cases relied upon by Defendants demonstrate, is not admissible.

While Defendants cite *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), for the proposition that, in securities cases, "expert testimony may help a jury understand unfamiliar terms

---

[7] Defendants concede that "Professor Freeman touches upon conclusions related to Plaintiff's ability to satisfy the applicable burdens of proof and persuasion." Def. Mem. at 10. This puts it lightly, to say the least. *Compare*, Freeman Reply at ¶5 ("The burden of proving that test is met rests with Plaintiff. It is not Sonoco's job to prove the opposite. The facts and approach relied on by Dr. Finnerty and Plaintiff do not meet that burden."), ¶12 (inclusion of items in Sonoco's forecasts "kills any hope Plaintiff may have of proving scienter."); Freeman Dep. at 118:8-14 (Q. -- and I'm summarizing, so correct me if I'm doing it incorrectly, you state that plaintiff has not met its burden of proof in this case. A. That's right. Q. And that's your expert testimony? A. That's a summary of what I believe.). Far from merely "touch[ing] upon conclusions related to Plaintiff's ability to" prove its case, Def. Mem. at 10, Freeman's reports consist entirely of legal argument and legal conclusions, and are indistinguishable from the legal briefs filed by Defendants in this case.

5

and concepts[,]" Def. Mem. at 7, they ignore the very next sentence: "Its use must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Bilzerian*, 926 F.2d at 1294.  Thus, the *Bilzerian* court found expert testimony regarding "general background on federal securities regulation and the filing requirements of Schedule 13D" to be appropriate, unlike here, because the expert "did not give his opinion as to whether [the defendant's] actions violated the securities laws[,]" further noting that "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice."  *Id*. at 1294-95.  Here, Freeman does not provide "general background" on the securities laws or the reporting requirements set forth by the SEC.  Instead, he provides case law and draws legal conclusions therefrom.  *See, e.g.*, Freeman Report at ¶¶10, 12, 14, 27, 29-31, 40-44, 49, 50-51, 53-57; Freeman Reply at ¶¶4-5 ("I rely on well-settled law."), ¶9 (arguing there is "no legal rationale for Finnerty's approach."), ¶¶11, 13.  Freeman's opinions plainly run afoul of *Bilzerian* and are not admissible.

The other cases relied upon by Defendants further support the inadmissibility of Freeman's opinions.  In *United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002) (*see* Def. Mem. at 8-9), the court allowed expert testimony regarding whether the data in a particular submission was "reasonable" because such testimony "would not merely state a legal conclusion and therefore is not excludable on the ground that it invades the province of the jury."  At the same time, the court upheld the district court's rejection of the type of testimony offered by Freeman here:  "[The expert]'s conclusion that the 510(k) submissions did not contain 'materially misleading statements' arguably constitutes a legal conclusion because materiality has a specialized legal meaning, and it is therefore within the district court's discretion to exclude such testimony." *Barile*, 286 F.3d at 761.

6

Because Freeman has not opined on "reasonable" practices of a publicly traded company but, rather, on ultimate legal conclusions involving terms with "specialized legal meaning," such as "materiality," his testimony and opinions are inadmissible. *See, e.g.*, Freeman Report at ¶10 (statement not "materially misleading"), ¶¶11-40, 45-51 ("Plaintiff's Focus is on Immaterial Items"); Freeman Reply at ¶¶4-5; Freeman Dep. at 30.

For these same reasons, *SEC v. U.S. Envtl., Inc.*, No. 94Civ.6608(PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002), and *In re Blech Sec. Litig.*, No. 94 Civ. 7696(RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003), underscore the inadmissibility of Freeman's opinions.[8] *See* Def. Mem. at 12-13. In *U.S. Envtl.*, the court found the expert's opinions acceptable because he did not "articulate [his] factual conclusions using language from the regulations that the defendants are alleged to have violated." 2002 WL 31323832, at *5. In contrast, had the expert "dr[awn] directly upon the language of the statute and accompanying regulations concerning 'manipulation and 'fraud[,]'" the testimony would have been inadmissible because, "[b]y using the language of the statute and regulations at issue, the expert [would be] invading upon the province of the trier of fact by drawing the ultimate legal conclusions." *Id.* Here, Freeman draws directly from the governing statutes and regulations to render his legal conclusions, thus making his proffered testimony inadmissible. *See* Motion at 5-9.

Likewise, the court in *Blech* found general background testimony regarding industry "standards and practices" to be acceptable, but that "experts are not to improperly use specific

---

[8] Defendants' reliance on *In re Derivative Litig., Herley Indus. Inc.*, No. 06-2964, 2010 WL 1375195 (E.D. Pa. Feb. 5, 2010), is similarly misplaced. *See* Def. Mem. at 6. There, the court held that certain portions of the proffered expert's testimony, like those offered by Freeman here, were impermissible because Fed. R. Evid. 704 "prohibits an expert witness 'from rendering a legal opinion.'" *Id.* at *1 ("While experts may testify to facts relevant to a legal conclusion, they are not permitted to draw that conclusion themselves.").

7

statutory and regulatory language, such as 'manipulation' and 'scheme to defraud' to describe the defendant's actions." 2003 WL 1610775, at *22. Because Freeman does not provide background testimony regarding "standards and practices" and instead quotes governing regulations to draw legal conclusions, his proffered testimony is improper.[9]

Two cases following *U.S. Envtl.* and *Blech* highlight the inadmissibility of Freeman's opinions. In *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005), the court excluded proffered expert opinion regarding the governing securities laws because "'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" There, like Freeman here, the proposed expert went "on to apply these generic legal principles to the facts of the instant case, resulting in [the expert] giving his opinion that the securities laws have in fact been violated." *Id*. In finding such opinions inadmissible, the court held:

> This type of expert testimony is not permitted. It is inadmissible because it usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court. . . . There is no reason why a jury in this case could not apply the law to the facts it finds to determine whether there has been a violation of the securities laws.

*Id*. at 471 (distinguishing *Blech* and *U.S. Envtl.* because, "[i]n these cases, however, the courts allowed testimony from experts within the securities industry merely to discuss the ordinary practices and usages of that industry, and specifically barred testimony that stated a legal conclusion."). As in *Schneider*, Freeman "has not offered testimony concerning 'terms and materials' relevant to the securities industry – except for his discussion of securities law terms that could easily be explained by a judge to a jury. . . . Rather, [Freeman] states his opinion concerning

---

[9] In *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981) (*see* Def. Mem. at 1, n.1, 2, n.3, 7), the court allowed expert testimony on "Standards and Customs in the Securities Industry." Here, Freeman does not offer testimony on "standards and customs," but on statutory and regulatory interpretation and application. Thus, *Huddleston* is inapposite.

8

the law governing securities fraud and concludes that the conduct of certain defendants [did not] violate[] that law. The [] cases cited by [Defendants] offer no support for the admission of this testimony." *See id*. at 472.

Like *Schneider*, *Ebbert v. Nassau Cnty.*, No. CV 05-5445(FB)(AKT), 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008), is indistinguishable. There, the court found the proffered expert testimony, as Freeman's does here, fell "into three categories: (1) discussion of applicable laws, including citations to statutes and cases; (2) application of generic legal principles to the facts of the case; and (3) offering of opinion that there is or is not a violation of the law." *Id*. at *7. In finding that "[n]one of the foregoing statements have any place in any expert report[,]" *id*. at *10, the court noted that "opinions embodying legal conclusions which 'encroach upon the court's duty to instruct on the law' are not admissible." *Id*. at *12 ("This is precisely the boundary which [Freeman]'s Reports improperly cross, particularly where [Freeman] concludes that certain criteria examined by him result in a finding that there is no violation of the [federal securities laws]. The Reports blur the line between industry practice and an opinion on the legality of Defendants' conduct.").

As a final attempt to save Freeman's inadmissible opinions, Defendants put forth the flawed analogy that "expert opinion on the appropriate standards for assessing Defendants' disclosures is also akin to expert opinions proffered on various standards of care, which courts have found admissible." Def. Mem. at 10. Of course, there is no "standard of care" governing a claim for securities fraud, as one might find in a negligence case. Rather, the governing statutory framework sets forth the elements of a securities fraud claim and it is through the application of facts to that law – a quintessential jury task – that a securities fraud claim is proven. It is for that reason that Defendants cite no securities fraud cases allowing such "standard of care" testimony. To the contrary, and as set forth above and in Plaintiff's Motion, testimony that draws "conclusions using

9

language from the regulations that the defendants are alleged to have violated" and where an expert "draws directly upon the language of the statute and accompanying regulations[,]" "invad[es] upon the province of the trier of fact by drawing the ultimate legal conclusions." *U.S. Envtl.*, 2002 WL 31323832, at *5.

### C.  Freeman's Opinion that Disclosing Confidential Pricing Information Would be Anti-Competitive is Not Admissible

Like his other opinions, Freeman's opinion that "[r]equiring the disclosure of confidential customer pricing information would be anti-competitive and ultimately harmful to investors" is inadmissible. Def. Mem. at 3, 4-5 (citing Freeman Report at ¶¶55-56). First, Freeman's opinion does not "fit" the case, as required under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), because it is based on a false premise as Plaintiff does not argue that Defendants should have disclosed "confidential customer pricing information." *See* Def. Mem. at 3. And as it relates to what Plaintiff actually argues, Freeman's opinion is contradicted by the record evidence.

Freeman states that "[n]ever has confidential pricing information for random individual clients . . . been viewed as subject to mandatory disclosure under the securities laws. Yet that is the result Plaintiff seeks to achieve in this case." Freeman Report at ¶56. To be clear, that is ***not*** the result Plaintiff seeks to achieve in this case. Plaintiff does not argue that Sonoco should have published the prices it charged to certain of its customers or disclosed the confidential terms of its contracts to the market. Rather, Plaintiff argues what the securities laws require – that Sonoco should have disclosed that it gave price concessions to some of its major customers, and lost a key account, both of which were expected to have negative impacts on the Company's overall selling prices, margins, and profits, ***before*** those negative items took effect. That is, instead of belatedly disclosing this information starting on July 20, 2007, ***after*** these items negatively impacted the Company, Defendants should have disclosed these items at the start of the Class Period – when they

10

had full knowledge of them and their anticipated impacts on Sonoco's financial future – to allow the market to accurately value Sonoco shares. Such disclosures do not equate to the release of the "proprietary customer pricing information" that Freeman warns against, as Freeman admits:

> Q. If the company had provided the same information about there being price concessions in flexible packaging at the beginning of the class period in February 2007, do you believe the company would have been faced with a stampede of customers seeking terms matching preferential treatment?
>
> A. No, that's not something I looked at and that's not something I've got an opinion on.

Freeman Dep. at 113. Because Freeman is arguing against a position not taken by Plaintiff, his opinion in this regard does not "fit" the case and should be excluded. *See Johnson v. Louisville Ladder*, No. 07-764-KD-M, 2008 WL 5122261, at *8 (S.D. Ala. Nov. 14, 2008) ("Where the opinion does not advance the question in dispute for which the opinion is proffered, then there is no 'fit' and the opinion should be excluded.") (citing *Daubert*, 509 U.S. at 591).

Then, proceeding to engage in wild conjecture, Freeman opines that the disclosures sought by Plaintiff would be used by competitors "as ammunition in honing their competing bids, and the disclosing company would also be faced with a stampede of customers seeking terms matching preferential treatment that the disclosing company had previously given quietly to a few." Freeman Report at ¶56. Again, Plaintiff does not contend that Sonoco should have disclosed the particular "terms" of its contracts. Rather, on July 20, 2007, the Company disclosed to the market that it had given "***price reductions in certain flexible packaging***" and answered analyst questions about the same. *See* Dkt. No. 125 at 24. These disclosures came too late, as the Company knew about them eight months earlier but hid them from the market, at the same time touting "higher selling prices" and allowing DeLoach to exercise over $6.6 million in stock options at artificially inflated prices. *Id*. at 20-22. If the Company was so concerned, as Freeman claims to be, about the competitive disadvantage of such disclosures, then why did Sonoco make them on July 20, 2007? Neither

11

Defendants nor Freeman offer a response.[10] Furthermore, as the flexible packaging division's vice president of sales, Don Gore, testified, there was no competitive disadvantage that resulted from the Company's overdue disclosure of price concessions in flexible packaging. *See id.* at 36-37, n.32 (Q. Again, if I represented to you that in July of 2007, the company disclosed certain price concessions within flexible packaging, did that put you at any sort of competitive disadvantage moving forward? A. It would not have put us at a competitive disadvantage, no. Q. And so any such disclosure about the price concessions in July of 2007 had no impact on the flexible packaging sales moving forward? A. No.). Thus, and contrary to Freeman's stated opinion, there is no basis to proclaim the disclosures sought by Plaintiff would result in an avalanche of customers seeking to reduce their pricing terms.

Finally, Freeman's opinion that a "parade of horribles" would ensue from releasing pricing information has no basis because Freeman did not investigate what effect, if any, the July 20, 2007 disclosures of price concessions in flexible packaging actually had on Sonoco. Freeman Dep. at 112-113 (Q. After the company's disclosure of the price concessions of flexible packaging on July 20th, 2007, was Sonoco faced with a stampede of customers seeking terms matching preferential treatment? A. Don't know. If it happened, I don't know about it.).

### D.     Freeman's Methodology is Fatally Flawed and Incomplete

Far from "evaluat[ing] the facts upon which plaintiff relies" and "tak[ing] into account facts and countervailing evidence," Def. Mem. at 3, Freeman reviewed hardly any of the evidence in this case before reaching his sweeping legal opinions. *See* Motion at 18-20. Thus, Defendants'

---

[10]     In addition, from December 1, 2006 through December 20, 2007, a 13-month stretch including the Class Period, Sonoco issued seven separate press releases touting price increases on certain of its markets and customers. *See* Dkt. No. 125 at 15. Given these announcements, Sonoco could not have been too concerned about keeping all pricing information confidential.

12

conclusory statement that Freeman "conducted a thorough review of the relevant evidence[,]" Def. Mem. at 12, is preposterous.  In their opposition, Defendants do not address how Freeman could "evaluate the facts upon which plaintiff relies" ***before Plaintiff has had an opportunity to present its case***.  Defendants also offer no response to how Freeman could base his wide-ranging legal opinions on his review of a tiny fragment of the discovery and pleadings in this case and before summary judgment, trial, or even the close of discovery.  The dearth of material relied upon by Freeman to reach his conclusions (*see* Motion at 18-20) – which is uncontroverted – renders all of his opinions, even if they were otherwise admissible, unsupportable.  *See id.* at 4 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.")).

Second, Freeman's opinions that the price concessions and lost customer need not be disclosed under the applicable SEC rules and regulations, *see* Def. Mem. at 3, is predicated on Freeman's "finding" that "[m]issing from this case is any evidence establishing that the isolated price concessions focused on by Plaintiff 'were reasonably likely' to have a material adverse effect on the Company's liquidity, net sales, revenues, and income from continuing operations." Freeman Report at ¶52.  As explained in Plaintiff's Motion, Freeman performed no analysis to reach this conclusion, thus rendering his opinion (which is also an inadmissible legal conclusion) inadmissible. Motion at 16-17. Defendants offer no response to how Freeman determined that the price concessions and lost customer would not "have a material adverse effect on the Company's liquidity, net sales, revenues, and income from continuing operations" when Freeman never calculated what the adverse effect on income was, or whether that adverse effect exceeded the five-percent threshold Freeman deemed "material."  *Id.*; Freeman Dep. at 108:3-25; 109:1-5 (Q.  So did

13

you do the math and come up with a figure of less than five percent? A. I don't remember doing the math and coming up with a less than five percent figure.). As Defendants' own cases make clear, such testimony is inadmissible. *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1219-20 (S.D. Cal. 2010) (Def. Mem. at 7) ("When asked about his analysis at his deposition, [the expert] admitted that he had not performed an impairment test to demonstrate that the identified events would have reduced the fair value of the Commercial wireless segment below its carrying value. As such, his opinion rests on his subjective belief or unsupported speculation.").

Because Freeman has no basis to conclude that the price concessions and lost accounts at issue in this case had no material adverse impact on Sonoco's liquidity, net sales, revenues, and income from continuing operations – which Defendants do not dispute in their opposition – his opinions lack any credible basis and are inadmissible.[11]

### E.     Freeman's Reliance on Noe is Impermissible

As explained in Plaintiff's Motion, Freeman improperly relies on the proffered expert opinions of Christopher F. Noe ("Noe") to help reach his legal conclusions. Motion at 17-18; *see* Freeman Report at ¶¶8, 19-20, 37. In response, Defendants state that Freeman can rely on Noe because Noe's opinions were generated for use in this case, while the opinions in *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003), were based on an expert's work in a different case. Def. Mem. at 13. This is a distinction without a difference, and

---

[11]     While Defendants state, in conclusory fashion, that "Freeman's report has a 'traceable, analytical basis in objective fact,' and the materials he reviewed as well as his background and experience related to corporate and securities laws provide 'further indicia of reliability,'" Def. Mem. at 12, they never actually explain his methodology. Simply having expertise in the securities laws does not enable a person to opine on matters that require quantification, such as determining whether an event had a "material adverse impact" greater than five percent, without performing any such quantification or analysis.

14

Defendants cite no law that supports their position. Simply, "[t]he rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation." *In re Imperial Credit*, 252 F. Supp. 2d at 1012 (collecting cases); *see also Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."). Thus, Freeman may not rely on Noe's opinions as a basis for his own.

## III.   CONCLUSION

"In our adversarial system, lawyers make arguments, judges write legal opinions – and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69-70. Thus, and as established in Plaintiff's Motion and herein, Freeman's proffered testimony and opinions are inadmissible and must be excluded from this Court's consideration.

| | |
|---|---|
| DATED:  March 28, 2011 | BEASLEY ALLEN CROW METHVIN PORTIS<br>& MILES, P.C.<br>WILLIAM E. HOPKINS (S.C. Bar 6075) |

                                      s/ WILLIAM E. HOPKINS
                                         WILLIAM E. HOPKINS

Post Office Box 4276
Montgomery, Alabama  36103
Telephone:  334/269-2343
334/954-7555 (fax)
bill.hopkins@beasleyallen.com

Liaison Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE (*pro hac vice*)
STEPHEN R. ASTLEY (*pro hac vice*)
MICHAEL L. GREENWALD (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
sastley@rgrdlaw.com
mgreenwald@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Lead Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2011, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/WILLIAM E. HOPKINS
        WILLIAM E. HOPKINS

17